13-132(L)
New York v. Solvent Chem. Co.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of January, two thousand fourteen.

PRESENT: DENNIS JACOBS,
　　　　　 DENNY CHIN,
　　　　　 CHRISTOPHER F. DRONEY,
　　　　　　　　　　 <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - - -X

State of New York,
　　　　 <u>Plaintiff</u>,

　　　　 -v.-

Solvent Chemical Company, Inc.,
　　　　 <u>Defendant-Third-Party</u>
　　　　 <u>Plaintiff-Appellee</u>,

　　　　 -v.-　　　　　　　　　　　　　　　　　　**13-132(L)**
　　　　　　　　　　　　　　　　　　　　　　　　**13-148**

Olin Corporation,
　　　　 <u>Third-Party Defendant-</u>
　　　　 <u>Appellant</u>,

E.I. du Pont de Nemours and Company,
　　　　 <u>Third-Party Defendant-</u>
　　　　 <u>Appellant</u>.

- - - - - - - - - - - - - - - - - - - - - -X

1

**FOR APPELLANTS:**    MICHAEL T. WETMORE (JoAnn T. Sandifer, Joel B. Samson, <u>on the brief</u>), Husch Blackwell LLP, St. Louis, Missouri.

DANIEL M. DARRAGH, Cohen & Grigsby, P.C., Pittsburgh, Pennsylvania.

**FOR APPELLEE:**    DENNIS P. HARKAWIK, (Charles D. Grieco, <u>on the brief</u>), Jaeckle Fleischmann & Mugel, LLP, Buffalo, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Curtin, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

Olin Corporation ("Olin") and E.I. du Pont de Nemours and Company ("DuPont") appeal from the judgment of the United States District Court for the Western District of New York (Curtin, <u>J.</u>), holding them liable to Solvent Chemical Company, Inc. ("Solvent") for contribution in connection with the remediation of two Niagara Falls, New York properties, the "Solvent Site" and the "Olin Hot Spot." In a December 19, 2011 summary order, we affirmed the allocation of response costs for the Solvent Site for the period prior to July 1, 2007 ("Past costs"), but vacated the district court's Past costs allocation for the Olin Hot Spot, and remanded for reallocation. <u>New York v. Solvent Chem. Co.</u>, 453 Fed. App'x 42 (2d Cir. 2011) ("2011 Summary Order"). In an accompanying opinion, we ruled that Solvent was entitled to a declaratory judgment holding Olin and DuPont liable for a portion of future response costs.[1] <u>New York v. Solvent Chem. Co.</u>, 664 F.3d 22, 26 (2d Cir. 2011) ("2011 Opinion"). On remand, the district court entered the declaratory judgment in favor of Solvent, and in addition, (i) reallocated Past costs for the Olin Hot Spot; (ii) allocated costs for both sites for the period July 1, 2007

---

[1] The Solvent Site is east of the Olin Hot Spot. Both properties are bordered on the south by DuPont property.

through December 31, 2011 ("Past Future costs"); and (iii) established a formula for the allocation of costs for periods beginning on or after January 1, 2012 ("Future Future costs"). In this appeal, Olin and DuPont challenge all three of these allocations. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

As a threshold matter, Olin and DuPont argue that, before ruling on remand, the district court was required to hold an evidentiary hearing under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2202, or alternatively, under the 2011 Opinion. We need not decide whether Olin and DuPont waived this argument, as Solvent contends. The 2011 Opinion ordered entry of a declaratory judgment "leaving for the future only the need to fix the amount of contribution and affording the court flexibility with respect to the time and manner for doing so." The district court thus was given broad discretion to rely on the developed record and to set past and future allocations without an additional hearing.

The remaining challenges relate to the court's allocation of (1) all costs (Past, Past Future, and Future Future costs), (2) Past costs only, and (3) Past Future costs only. We review the district court's allocation of response costs for abuse of discretion. Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 169 (2d Cir. 2002). A district court abuses its discretion where (1) its decision rests on a legal error or clearly erroneous factual finding or (2) its allocation cannot be located within the range of permissible outcomes. Id.

**1.** Olin argues that the district court erred in all cost allocations by using combined monitoring well data for the Solvent Site and Olin Hot Spot rather than site-specific data, and by allocating 98% of the chlorinated benzenes at the Olin Hot Spot to Olin.[2]

_____

[2] Olin also argues that the cost allocation between the Olin Hot Spot and the Solvent Site should have been based on the relative amount of contaminants filtered at each site rather than on the volume of water pumped. The 2011 Summary Order affirmed the use of the water-volumetric approach for allocating Solvent Site Past costs, and on remand the district court reasonably applied it to the Olin Hot Spot (and all Past Future and Future Future costs).

Our 2011 Summary Order upheld the allocation of Past costs for the Solvent Site, which utilized combined monitoring well data. This data (when averaged with site-specific pumping well data) was used to bridge the wide variation between the experts' estimates. New York v. Solvent Chem. Co., 685 F. Supp. 2d 357, 451 (W.D.N.Y. Jan. 26, 2010). The use of combined monitoring well data was therefore within the court's discretion in allocating Past costs for the Olin Hot Spot and all Past Future and Future Future costs (for both sites).

The allocation of 98% of the chlorinated benzenes at the Olin Hot Spot to Olin was also within the bounds of discretion. The 2011 Summary Order observed that attributing 6.35% of the Olin Hot Spot costs to Olin was without support in the record; when the district court properly applied its factual findings, it came to a different result. The flow of groundwater from Olin's plant to the Olin Hot Spot as affected by the bedrock formation, and the elevated levels of certain classes of benzenes, strongly support the conclusion that Olin's plants are the chief source of the benzene contaminants at the Olin Hot Spot.

**2.** DuPont argues for a 10% reduction in its share of liability for the Olin Hot Spot, on the ground that the district court discounted its Solvent Site liability by this percentage. The district court explained its reason for treating the site differently. The chlorinated benzenes at the Solvent Site (and not those at the Hot Spot) were the primary reason for the remediation. Accordingly, as the district court concluded, "it would be inequitable to discount DuPont's share of response cost liability at the Olin Hot Spot based on the existence of chlorinated benzene contamination at the Solvent Site that, in all likelihood, could not have migrated to the Hot Spot." DuPont was therefore not entitled to any reduction in its liability for Olin Hot Spot response costs.

**3.** With regard to Past Future costs, Olin and DuPont argue that 2012 pumping well data (not the 2002 pumping well data) should have been used for allocation. In addition, Olin

4

argues that 2007-11 monitoring well data (not the 2004-06 data) should have been used.[3]

The district court was not obliged to obtain new site-specific pumping well data for purposes of allocating Past Future costs. The 2012 data, collected after the district court allocated Past Future costs, indicated a change in groundwater chemistry. The district court was thus faced with two alternatives: to utilize the 2012 data and extrapolate back to the 2007-11 period, or to extrapolate forward from 2002 utilizing the older data. The latter approach was within its discretion.

However, the district court committed an abuse of discretion by using 2004-06 monitoring well data in allocating Past Future costs when contemporaneous 2007-11 monitoring well data was available. In denying Olin's Rule 59 motion, the district court "found nothing in the site-specific monitoring well data from 2007-2012 . . . that might reasonably be expected to cast doubt on these findings or observations, or to otherwise alter the equitable allocation determinations reached by the court . . . ." This conflates two distinct challenges: (1) use of combined monitoring well data in lieu of *site-specific* monitoring well data, and (2) use of 2004-06 data in lieu of *contemporaneous 2007-2011* monitoring well data. As explained above, the court committed no abuse of discretion in creating a formula that utilizes combined monitoring well data. But the district court offers no explanation for ignoring contemporaneous monitoring well data from 2007-11, which in combined form could be plugged right into the court's equation.

For the foregoing reasons, and finding no merit in Olin's and DuPont's other arguments:

With respect to Olin Hot Spot Past costs, we **AFFIRM** the district court's allocation.

---

[3] These arguments were raised in the parties' Fed. R. Civ. P. 59(e) motions to alter or amend the August 27, 2012 judgment of the district court. We review the December 6, 2012 order denying these motions for abuse of discretion. Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).

With respect to Future Future costs for both sites, we **AFFIRM** the allocation formula established by the district court, which averages new site-specific pumping well data and combined monitoring well data gathered twice a year to determine the relative concentrations of chlorinated benzenes and chlorinated aliphatics at each site.[4]

With respect to Past Future costs for both sites, we **VACATE** and **REMAND** for reallocation, and direct the district court to replace the 2004-06 combined monitoring well data with 2007-11 combined monitoring well data. The formula averaging site-specific pumping well data with combined monitoring well data, as well as the use of 2002 site-specific pumping well data, are not to be altered for purposes of this reallocation.[5]

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[4] For the Solvent Site: DuPont is responsible for 88% of the chlorinated aliphatics, and Solvent for the remaining 12%. Solvent is responsible for 98% of the chlorinated benzenes. Liability for the remaining 2% of chlorinated benzenes is split between Olin and Solvent. Solvent, 685 F. Supp. 2d at 452.

For the Olin Hot Spot: DuPont is responsible for 100% of the chlorinated aliphatics; Olin is responsible for 98% of the chlorinated benzenes; and Solvent is responsible for 2% of the chlorinated benzenes.

[5] The district court has discretion to average combined monitoring well data for the entire Past Future costs period and fix the relative percentages of chlorinated aliphatics and benzenes; alternatively, the district court may calculate relative percentages for each year or half year (and, in the case of 2007, the second half of the year) separately. If monitoring well data has been collected more than once in any year between 2007-11, the district court has discretion to use some or all of the data collected in that year. For example, if data is gathered quarterly, the district court may choose to utilize the first and third quarter data and ignore the data from the second and fourth quarters.