**DOW JONES & COMPANY, INC.,**
**Plaintiff–Appellant,**

v.

**HARRODS LIMITED, and Mohamed Al Fayed, Defendant–Appellees.**

**Docket No. 02–9364.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 23, 2003.

Decided: Oct. 10, 2003.

Jack M. Weiss, Gibson, Dunn & Crutcher LLP, New York, N.Y. (Alia L. Smith, of

counsel, Stuart D. Karle, Dow Jones & Co., Inc., New York, NY, on the brief), for Plaintiff–Appellant Dow Jones.

Bruce R. Ewing, Dorsey & Whitney LLP, New York, N.Y. (Zachary W. Carter, Lile Deinard, of counsel, on the brief), for Defendant–Appellees Harrods Limited and Mohammed al Fayed.

Before: FEINBERG, KATZMANN, and RAGGI, Circuit Judges.

## BACKGROUND

PER CURIAM.

Plaintiff–Appellant Dow Jones & Co. ("Dow Jones") is an American corporation that is well known for publishing the *Wall Street Journal* newspaper. In the 1990s, Dow Jones expanded its publishing activities onto the Internet, making *Wall Street Journal* content available through a website, www.WSJ.com ("WSJ.com"). Unlike other newspaper web sites, WSJ.com is only fully available to paid subscribers. WSJ.com stories are available to subscribers anywhere in the world, however, once they have been posted on the site. Defendant–Appellee Harrods Limited ("Harrods") is a well-known retailer located in London. Defendant–Appellee Mohamed Al Fayed ("Al Fayed") is Chairman of Harrods and majority owner of the company.

On Sunday, March 31, 2002, Harrods issued a press release in the United Kingdom that was titled "Al Fayed Reveals Plan to 'Float' Harrods." The Dow Jones editors received this release and understood it to refer to a plan to "float" shares of stock in Harrods as part of a public offering; they wrote a story accordingly, which was published in the April 1, 2002 print edition of the *Wall Street Journal.* The story was also made available worldwide on WSJ.com. In fact, as Harrods revealed the next day, the press release was intended as an April Fool's Day joke [1] designed to draw attention to Al Fayed's personal web site, which had been referenced in the press release. The *Journal* ran a correction on April 2, 2002, which was also made available on WSJ.com.

On April 5, 2002, the *Journal* ran a brief item as part of its weekly column "Bids & Offers" that referred to the joke. *See* William Power, Bids & Offers, Wall St. J., Apr. 5, 2002, at C8 (the "April 5 story"). Under the headline "The Enron of Britain?," the item repeated the story of the hoax and noted that the *Journal* had been taken in as well. The story contained the sentence "If Harrods . . . ever goes public, investors would be wise to question its every disclosure." It also questioned whether Harrods could get into legal trouble for its misleading release and noted that since Harrods was privately owned, it was not subject to any of the authorities that regulate publically-traded corporations. This story was also made available on the WSJ.com web site. After the April 5 story ran, Harrods's counsel contacted Dow Jones and demanded a retraction, and apology, and "substantial damages." Extensive correspondence followed, during which Harrods threatened to sue Dow Jones in the U.K.

On May 24, 2002, Dow Jones brought the present action in the United States District Court for the Southern District of New York (Marrero, *J.*), seeking a declaration that the April 5 story was not libelous as a matter of law. On May 29, 2002, Harrods brought suit against Dow Jones in the U.K. (the "U.K. Action") based on

---

1. Harrods notes in its brief that there is a tradition in the U.K. for businesses to issue April Fools' Day press releases.

the availability of the April 5 story in the U.K. via WSJ.com.; the suit sought damages and an injunction ordering Dow Jones to remove the April 5 story from the WSJ.com archives. On July 8, Dow Jones amended its complaint in the Southern District action to seek an anti-suit injunction barring Harrods from suing in the U.K.

Harrods moved to dismiss pursuant to Fed. R. Civ. P 12(b)(1) & (2) on June 20, arguing that the district court lacked both personal and subject matter jurisdiction. In a Decision and Order dated October 11, 2002, the district court granted Harrods's motion and dismissed the complaint. *Dow Jones, Inc. v. Harrods, Ltd.,* 237 F.Supp.2d 394 (S.D.N.Y.2002). The district court held that: (1) the action was non-justiciable because it was not ripe for adjudication; (2) there was no "actual controversy" as required by the Declaratory Judgment Act, 28 U.S.C. § 2201; and (3) the court would decline to exercise its jurisdiction to hear the case under the Act on the grounds that no useful purpose would be served by a declaration and that principles of international comity would be violated. This appeal followed.

### DISCUSSION

The Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not. The statute reads, "In a case of actual controversy within its jurisdiction ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 282–83, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Public Serv. Comm'n of Utah v. Wycoff,* 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *see also* 10b Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 2759 (3d ed.1998) ("Wright & Miller").

The Supreme Court has also made it clear that this broad discretion is reviewed deferentially, for abuse of discretion. *See Wilton,* 515 U.S. at 289, 115 S.Ct. 2137; *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494–95, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *see also* Wright & Miller, § 2759, at 555–58. As we have explained, "A district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *United States v. Couto,* 311 F.3d 179, 185 (2d Cir.2002) (quoting *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001)).

In the opinion below, the district court looked to a set of factors that this and other circuits have developed to guide the exercise of discretion in Declaratory Judgment Act cases. *See Dow Jones,* 237 F.Supp.2d at 432–37. Many years ago, this Court articulated a simple test that asks (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. *See Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.1969). Other circuits have built upon this test, to ask also: (1) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the

domain of a state or foreign court; and (3) whether there is a better or more effective remedy. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A.,* 28 F.3d 572, 577 (7th Cir.1994); *Grand Trunk R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984); *see also* Wright & Miller § 2759, at 547–49. The district court cited the five tests noted above, 237 F.Supp.2d at 432, then performed a detailed analysis of the application of all the factors to the instant case. *Id.* at 437–47. The court concluded that it would decline to exercise discretionary jurisdiction over the action. *Id.* at 447.

Dow Jones's complaints about the district court's decision amount to little more than the argument that the district court should have balanced the various factors differently. Because we do not believe that the district court's decision is premised on an erroneous view of the law, nor a clear error of fact, we do not believe that the court abused its discretion. Accordingly, we affirm on that basis and express no view about the other two grounds.

The judgment of the district court is affirmed.