**Bernard F. DEPALMA, Plaintiff,**

v.

**NIKE, INC., an Oregon Corporation, Canstar Sports Group, Inc., a Canadian corporation, Canstar Sports USA, a Vermont corporation, Tropsport Acquisitions Inc., a Canadian corporation, Karhu USA Inc., a Vermont corporation, and Sherwood Drolet Corporation, a Canadian corporation, Defendants.**

**No. 5:95–CV–1428(NAM/GJD).**

United States District Court,
N.D. New York.

Oct. 28, 2004.

James A. Power, Jr., Esq., Marguerite Del Valle, Esq., Power Del Valle, LLP, New York, NY, for Plaintiff.

Hancock & Estabrook, LLP, James R. Muldoon, Esq., of counsel, Syracuse, NY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, J. Michael Jakes, Esq., of counsel, James W. Edmondson, Esq., of counsel, Washington, D.C., for Defendants Nike, Inc., Canstar Sports Group Inc. and Canstar Sports USA. (now Bauer Nike Hockey Inc. and Bauer Nike Hockey USA, formerly Bauer Inc. and Bauer USA).

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

Plaintiff commenced this action on September 29, 1995, alleging infringement of United States Patent No. 4,507,801 ("801 patent") and seeking injunctive and monetary relief. Defendants interposed the affirmative defense that the 801 patent was invalid and a counterclaim seeking a declaration that the 801 patent was invalid. By Memorandum–Decision and Order dated July 5, 2001, this Court granted defendants' motion for summary judgment dismissing the complaint and denied their motion for summary judgment on the counterclaim. The Court ordered that the action would proceed upon the counterclaim and plaintiff's answer thereto.[1]

**1.** On October 23, 2001, the Court denied plaintiff's motion for a *"sua sponte"* order of

Plaintiff now moves pursuant to Fed. R.Civ.P. 12(h)(3) to dismiss the counterclaim, based on the fact that the patent expired on September 7, 2002. Plaintiff argues that there is no longer a need for a declaration regarding the validity of the patent and that therefore there is no longer an actual justiciable controversy such as would support a declaratory judgment.

In opposition, defendants contend that an actual case or controversy remains between the parties. Specifically, they argue that plaintiff "has indicated his intention to pursue infringement claims against them by appealing the summary judgment of noninfringement to the Federal Circuit."

■ The Declaratory Judgment Act, 28 U.S.C.A. § 2201, provides in subdivision (a):

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Courts have "consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co., Inc. v. Harrods Ltd.,* 346 F.3d 357, 359 (2d Cir. 2003). Factors which guide district courts' exercise of this discretion include whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; whether a judgment would finalize the controversy and offer relief from uncertainty; whether dismissal would prevent "procedural fencing"; and whether the question to be decided is of public importance. *See id.,* 10 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2759 (1973).

The importance of declaratory judgment in patent cases is explained as follows:

> Certainly one of the most common and indisputably appropriate uses of the declaratory judgment procedure is to enable one who has been charged with patent infringement to secure a binding determination of whether proposed conduct will infringe a patent in question without waiting until he becomes the defendant in an actual infringement suit. The purpose of granting declaratory relief to one potentially liable for infringement is to allow him to know in advance whether he may legally pursue a particular course of conduct. The commercial or manufacturing activity he proposes may be of substantial benefit to society, yet it may have to be abandoned if it must be carried out at the risk of liability for patent infringement. Indeed, it was part of the purpose of the Declaratory Judgment Act to prevent patent owners from suppressing competition by threatening infringement without ever actually bringing the suits that would put their patents to the test.

*Hanes Corp. v. Millard,* 531 F.2d 585, 592 (D.C.Cir.1976) (citation omitted).

■ The Federal Circuit has stated a two-part test for determining the justiciability of a claim to declare a patent invalid: there must be both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the

---

summary judgment dismissing the counterclaim or, in the alternative, for entry of judgment under Fed.R.Civ.P. 54(b) on so much of

the July 5, 2001, order as dismissed the complaint, so as to permit an immediate appeal.

part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993). The purpose of this two-part test is "to determine whether the need for judicial attention is real and immediate, or is prospective and uncertain of occurrence." *Id.* (citation omitted).

In the case at bar, the existence of plaintiff's action for infringement of the 801 patent obviously met the first prong of the *BP Chemicals* test. Moreover, defendants were engaged in activity which could constitute infringement of the patent so long as the patent was viable. During the life of the patent, adjudication of defendants' counterclaim of patent invalidity would have enabled defendants to make decisions regarding future activity without uncertainty concerning the legality of their conduct or their exposure to liability for future damages. *See Hanes,* 531 F.2d at 592. Accordingly, during the life of the patent, the need for judicial attention was real and immediate within the meaning of *BP Chemicals.*

Now that the 801 patent has expired, however, there is no present activity on the part of defendants which could constitute infringement. Defendants have no need for a declaration regarding the validity of the patent to enable them to make decisions regarding future activity. Any infringement of the 801 patent has already occurred; any damages have already accrued. *See id.; Channel Master Corp. v. JFD Electronics Corp.,* 263 F.Supp. 7 (E.D.N.Y.1967). Moreover, inasmuch as this Court has dismissed the complaint, defendants can have no reasonable apprehension of facing an infringement suit. Of course, if plaintiff wins on appeal and proceeds to prosecute his infringement complaint, defendants would be entitled to pursue their claim of invalidity. As the case now stands, however, plaintiff has no viable claim for past or future infringement; thus, defendants can gain no possible benefit from a declaration of invalidity. There is no "real and immediate" need for judicial attention to the question of invalidity of the 801 patent.

Accordingly, the Court in its discretion declines to exercise jurisdiction over defendants' declaratory counterclaim. It is therefore

ORDERED that plaintiff's motion is granted; and it is further

ORDERED that the counterclaim is dismissed.

IT IS SO ORDERED.