10-2026-cv
State of New York v. Solvent Chemical Co. et al.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: September 19, 2011     Decided: December 19, 2011)

Docket Nos. 10-2026-cv(L), 10-2166(XAP), 10-2383-cv(XAP)

- - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK,
        Plaintiff,

        -v.-

SOLVENT CHEMICAL COMPANY, INC.,
        Defendant-Third Party
        Plaintiff-Appellant-Cross
        Appellee,

ICC INDUSTRIES, INC.,
        Defendant-Third Party
        Plaintiff-Cross Appellee,

        -v.-

OLIN CORPORATION,
        Third Party Defendant-
        Counterclaimant-Appellee-
        Cross Appellant,

E.I. DU PONT DE NEMOURS & COMPANY,
        Third Party Defendant-
        Appellee-Cross Appellant.

- - - - - - - - - - - - - - - - - - - - -x

Before:          JACOBS, <u>Chief Judge</u>, HALL and LYNCH,
                 <u>Circuit Judges</u>.

Plaintiff sought contribution under the Comprehensive Environmental Response and Compensation Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, for both past and future costs of cleaning up industrial pollution.  The United States District Court for the Western District of New York (Curtin, <u>J.</u>) awarded contribution for past cleanup costs but declined to issue a declaratory judgment as to future contribution.  For the following reasons, we REVERSE the denial of a declaratory judgment.  Numerous other issues raised on appeal are decided in a summary order issued simultaneously with this opinion.

**FOR APPELLANT:**          DENNIS P. HARKAWIK (Charles D. Grieco, Brenda J. Joyce, <u>on brief</u>), Jaeckle Fleischmann & Mugel, LLP, Buffalo, New York, <u>for</u> <u>Appellant</u> Solvent Chemical Company, Inc.

**FOR CROSS APPELLEE:**      ROBERT J. BASIL (Irwin F. Roth, Law Office of Irwin Roth, New York, New York, <u>on brief</u>), Collier & Basil, P.C., New York, New York, <u>for</u> <u>Cross Appellee</u> ICC Industries, Inc.

**FOR APPELLEES:**           DANIEL M. DARRAGH, Cohen & Grigsby, P.C., Pittsburgh, Pennsylvania, <u>for</u> <u>Appellee</u> E.I. du Pont de Nemours & Company.

                             JOANN T. SANDIFER (Michael H. Wetmore, Joel B. Samson, <u>on brief</u>) Husch Blackwell LLP, St. Louis, Missouri, <u>for</u> <u>Appellee</u> Olin Corporation.

DENNIS JACOBS, Chief Judge:

This appeal is taken from a judgment of the United States District Court for the Western District of New York (Curtin, J.) that (among other rulings) denied a declaratory judgment of liability for future cleanup costs under the Comprehensive Environmental Response and Compensation Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. Plaintiff Solvent Chemical Company, Inc. ("Solvent") sued two adjoining property owners, E.I. du Pont de Nemours & Co. ("DuPont") and Olin Corporation ("Olin"), seeking contribution for costs that Solvent had incurred and continues to incur cleaning up hazardous waste pursuant to a consent decree with the State of New York. The district court awarded Solvent contribution for past costs, but declined to issue a declaratory judgment. The court declined to declare *liability* chiefly because the *allocation* of future costs would be premature. New York v. Solvent Chemical Co., 685 F. Supp. 2d 357, 455-56 (W.D.N.Y. 2010).

The other issues raised on appeal are decided in a summary order issued simultaneously with this opinion. In this opinion, we conclude that a declaratory judgment should be issued in favor of Solvent, and to that extent we reverse

3

the judgment.

## BACKGROUND

At varying times over the past century, Solvent, DuPont, and Olin owned adjoining facilities in the City of Niagara Falls, New York. DuPont's plant on the banks of the Niagara River manufactured various chlorinated aliphatic compounds. Solvent and Olin owned and operated adjacent sites immediately inland of DuPont's. A portion of Olin's property (known as the Olin Hot Spot) is bounded by the Solvent property on one side and on the other side by Gill Creek, which thence continues across the DuPont site into the Niagara River. Olin also owns property on the other side of Gill Creek, at which it manufactured the pesticide benzene hexachloride ("BHC") and produced as byproducts various chlorinated benzenes. Production of BHC ended in 1956 when Olin's plant exploded. In the mid 1970s, chlorinated benzenes and other chemicals were manufactured at the Solvent Site.

In 1983, New York sued Solvent and others for environmental contamination at the Solvent Site. In 1996, the New York Department of Environmental Conservation

4

("DEC") issued a Record of Decision ("ROD") requiring Solvent to undertake remedial action at both the Solvent Site and the Olin Hot Spot as a result of chlorinated benzene contamination. Solvent entered into a consent decree obligating it to perform the remedies specified in the ROD in settlement of New York's CERCLA claims. Solvent's cleanup operations began in 1999 and continue to this day.

In 1998, Solvent filed a fifth amended third-party complaint adding Olin as a party and seeking contribution for its response costs incurred under its consent decree with New York on the basis of chlorinated benzenes originating from Olin's BHC plant. In 2001, Solvent commenced a suit against DuPont for costs incurred under its consent decree with New York that resulted from the migration of chlorinated aliphatics from the adjoining DuPont Facility onto the Solvent Site and Olin Hot Spot. Solvent incurred additional cleanup costs as a result of the aliphatic contamination.

Solvent's claims against DuPont and Olin were consolidated and tried without a jury over 19 days in late 2007. For administrative convenience, the parties agreed

5

that all response costs incurred through June 30, 2007 would be treated as past costs, and that all costs thereafter would be the subject of Solvent's prayer for a declaratory judgment that DuPont and Olin were liable for future cleanup costs. Expert testimony conflicted about the source of the various chemicals that had to be cleaned up, and about the groundwater flow that carried the pollutants among properties. The court noted the "wide disparity in the parties' interpretation of the vast amounts of data generated over the course of decades of remedial investigations and clean-up activities" and deplored the parties' "inability to reach any workable consensus as to the reasonable scientific conclusions to be drawn" from the evidence collected. Solvent, 685 F. Supp. 2d at 435-36, 451, 452.

The judgment (entered May 14, 2010) awarded Solvent contribution from DuPont in the amount of $2,050,371 and from Olin in the amount of $462,288, for costs incurred through June 30, 2007. It denied Solvent's request that DuPont and Olin be declared liable for future cleanup costs (allocation to be determined after costs are incurred). The separate summary order issued today affirms the ruling that

Solvent is entitled to past response costs by DuPont and Olin under CERCLA section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), but vacates the allocation of response costs in part, and remands for reallocation.

## DISCUSSION

We review a district court's refusal to grant a declaratory judgment for abuse of discretion.  Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).

## I

As to certain claims, CERCLA section 113(g)(2) requires a district court to "enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. § 9613(g)(2).  Oddly, the wording of section 113(g)(2) limits its application to "[a]n initial action for recovery of the costs referred to in section 9607 [CERCLA § 107]," i.e., not section 113(f).  Id.  Solvent contends nevertheless that section 113(g)(2) also applies to contribution actions under section 113(f).  The First and Sixth Circuits agree.  See GenCorp, Inc. v.

7

<u>Olin Corp.</u>, 390 F.3d 433, 450 (6th Cir. 2004); <u>United States v. Davis</u>, 261 F.3d 1, 46-47 (1st Cir. 2001).  Other circuits have also issued declaratory judgments for future costs under section 113(f), but have been less clear about the source of that authority.  <u>See Boeing Co. v. Cascade Corp.</u>, 207 F.3d 1177, 1191-92 (9th Cir. 2000) (upholding grant of declaratory judgment in contribution case after recognizing that section 113(g)(2) did not prohibit declaratory relief for section 113(f) claims); <u>Tosco Corp. v. Koch Indus.</u>, 216 F.3d 886, 897 (10th Cir. 2000) (finding that a declaratory judgment in connection with a section 113(f) suit was an appropriate remedy where future response costs were likely to be incurred).  And in one case under section 113(f), this Circuit has recognized that the "proper remedy for future response costs is not a present lump-sum payment of anticipated expenses but instead a declaratory judgment award dividing future response costs among responsible parties."  <u>Goodrich Corp. v. Town of Middlebury</u>, 311 F.3d 154, 175 (2d Cir. 2002) (internal quotation marks omitted).

We need not decide whether section 113(g)(2)'s mandatory wording (on entry of a declaratory judgment for future liability) applies to § 113(f) contribution actions,

8

because the factors considered by a district court under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), are sufficient to require a declaratory judgment in this case. Id. at 359.

II

The district court ruled that "final judgment regarding the allocation of future costs to any party other than Solvent would be premature." Solvent, 685 F. Supp. 2d at 455-56. The district court listed its reasons for declining to issue a declaratory judgment: (1) the "principal negative environmental impact of the chlorinated benzene contamination" from Solvent's plant; (2) the failure of testifying experts to provide the court with a basis for interpreting the scientific data presented; (3) the DEC's pronouncement that its "future determinations with regard to the effectiveness of the groundwater remedy at the Site will be made based on data pertaining to hydraulic control of the contaminants of concern identified in the Solvent ROD--chlorinated benzenes--without regard to control of chlorinated aliphatics"; (4) the "extent to which the continued presence of chlorinated aliphatics in the pumped

9

groundwater might be deemed responsible for any incidental increase in treatment costs has already been taken into consideration by the court in discounting DuPont's allocable share of past costs"; and (5) the DEC's continued review of other remedies to account for chlorinated aliphatics in the groundwater.  Id. at 455.

## III

The reasons given by the district court might justify a refusal to *allocate* cleanup responsibility; none of them, however, supports a refusal to grant a declaratory judgment as to *liability* itself.  The district court has already decided that Olin and DuPont were liable for contribution as to historical losses.  Save for the possibility that the DEC might in the future impose different remedies to clean up the chlorinated aliphatics, none of the factors identified by the court distinguishes between past and future cleanup. That is to say, the factors do not explain why DuPont and Olin should pay for cleanup costs through June 30, 2007, but not for those incurred on July 1, 2007 and thereafter.  And should the DEC take action in the future regarding chlorinated aliphatics, the district court can consider that

10

fact in allocating costs down the road.  Even concern over the future role of chlorinated aliphatics in the ongoing cleanup would not affect Olin's responsibility to contribute to cleanup costs based on its discharge of chlorinated benzenes.

When faced with a request for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a district court must inquire:

> [1] whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved;
> . . . [2] whether a judgment would finalize the controversy and offer relief from uncertainty[;] . . . [3] whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; [4] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [5] whether there is a better or more effective remedy.

Dow Jones & Co., 346 F.3d at 359-60 (internal quotation marks omitted).  These factors require a district court to issue a declaratory judgment in this case.  A declaratory judgment would "serve a useful purpose" here for at least two reasons.

First, there is a short statute of limitations for a CERCLA contribution claim.  See 42 U.S.C. § 9613(g)(3) (three year statute of limitations from entry of judgment in

11

cost recovery action, entry of administrative order, or judicially approved settlement). Solvent entered into the consent decree with New York on April 2, 1997, and could not commence a new suit for contribution after April 2, 2000.[1] Since the limitations period is triggered by approval of the consent decree, which may signal only the beginning of cleanup, declaratory judgments will often be necessary to ensure an equitable apportionment of cleanup costs that (as is common) are incurred over many years. That is the case here: Though the consent decree between New York and Solvent was completed in April 1997, construction of the cleanup operation did not commence until 1999 and the statute of limitations expired soon after, in April 2000.

Second, the "costs and time involved in relitigating issues as complex as these where new costs are incurred would be massive and wasteful." Boeing, 207 F.3d at 1191. As is typical, the CERCLA claims and defenses below were complex, and entailed years of litigation, weeks of trial, and thousands of pages of briefing. A declaratory judgment with respect to liability saves litigants and courts

---

[1] In the summary order issued in conjunction with this opinion, we conclude that DuPont waived its statute of limitations defense to Solvent's contribution claim by failing to raise it until five years into litigation.

12

substantial time and money, leaving for the future only the need to fix the amount of contribution and affording the court flexibility with respect to the time and manner for doing so.  Once the uncertainties regarding ongoing response costs have been resolved, a declaratory judgment allows the parties to invoke the jurisdiction of the district court pursuant to 28 U.S.C. § 2202 and obtain "further relief" in the form of an order establishing the precise costs that each party will bear.

Accordingly, we conclude that: the judgment would "serve a useful purpose in . . . settling the legal issues involved," the judgment is not being used for procedural gamesmanship or a race to res judicata, it will not increase friction between sovereign legal systems, and there is no "better or more effective remedy"--in fact there would be no remedy for Solvent at all without declaratory relief.  Dow Jones & Co., 346 F.3d at 359-60.  It does not matter that a declaratory judgment of liability alone will not "finalize the controversy and offer relief from [all] uncertainty." Id.

13

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court insofar as it declines to issue a declaratory judgment in favor of Solvent against DuPont and Olin.