John D. KUHNS, Plaintiff,

v.

**Dean LEDGER, Robert Fasnacht, Ronald B. Foster and NanoFlex Power Corp., Defendants.**

**15 Civ. 3246 (NRB)**

United States District Court, S.D. New York.

Signed August 24, 2016

Thomas James Fleming, Renee Michele Zaytsev, Olshan Frome Wolosky LLP, New York, NY, for Plaintiff.

Aegis Joseph Frumento, Stern, Tannenbaum & Bell, L.L.P., New York, NY, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD,
UNITED STATES DISTRICT JUDGE

Plaintiff John D. Kuhns brings this action against defendants Dean Ledger, Robert Fasnacht, Ronald B. Foster, and NanoFlex Power Corp. ("NanoFlex" or "the company") seeking damages, injunctive, and declaratory relief arising out of his termination as Executive Chairman and co-CEO of NanoFlex. Presently before us is defendants' partial motion to dismiss the complaint. For the reasons stated below, defendants' motion is granted in part and denied in part. Specifically, Counts Two, Five (as to defendant Foster), and Seven are dismissed.

## BACKGROUND

The following facts, which we assume to be true for purposes of this motion, are drawn from Kuhns' amended complaint.

Defendant NanoFlex, a Florida corporation with its principal place of business in Arizona, "is engaged in the invention, development, commercialization and licensing of advanced photovoltaic technologies and intellectual properties." Am. Compl. ¶ 7. During the events described herein, defendant Ledger served as co-CEO and defendant Fasnacht served as Executive Vice President. Defendant Foster holds 47% of the outstanding shares of NanoFlex, making him its largest shareholder. The Board of Directors of NanoFlex consisted of Kuhns, Ledger, and Fasnacht.

Kuhns, who had invested in NanoFlex for more than a decade, acted as Co-CEO and Executive Chairman of the board of NanoFlex pursuant to an employment agreement dated September 24, 2013, which was amended and restated on October 22, 2013 (the "Employment Agreement"). The Employment Agreement provided that Kuhns would serve as Executive Chairman of the board of directors for five years.

In late 2014 and early 2015, NanoFlex could not pay its officers and, according to the amended complaint, Ledger resorted to fraud in order to raise money for the company. To do so, Ledger made baseless representations to investors: he told them that NanoFlex's equity had an imputed value of $50-60 million and that NanoFlex would list its shares on the New York Stock Exchange in 2015. Ledger further offered potential investors "units" of a share of common stock and a warrant with a strike price of $2.50, without providing reliable valuation and capitalization figures, and proposed modifying the strike price without authorization from the board of directors. In addition, Ledger obtained short-term loans even though NanoFlex could not repay these loans except from new infusions of capital. Kuhns told Ledger not to make these representations to investors several times.

Pursuant to an agreement between NanoFlex and Kuhns' investment banking firm, Kuhns Brothers, Inc., Kuhns separately obtained a financing proposal from SLS Holdings VII LLC ("SLS Holdings"). Under the terms of the proposal, SLS Holdings would extend to NanoFlex a $3 million loan for three years at 5% interest, and would require the resignations of certain members of management. In addition, SLS Holdings would receive a warrant to purchase 25% of NanoFlex for $1.00. This proposal valued NanoFlex at $12 million. Kuhns circulated the proposal on March 6, 2015 and advocated exploring the proposal further, while Ledger and Fasnacht objected to the offer. SLS Holdings withdrew the proposal after NanoFlex's counsel, at the direction of Fasnacht and Ledger,

asked for an extension of the deadline to accept the offer.

On March 16, 2015, Fasnacht told Kuhns that he and Ledger wanted Kuhns to resign. He told Kuhns that they were acting on behalf of "the shareholders," who found the SLS Holdings proposal "unacceptable." Am. Compl. ¶ 24. The "shareholders," according to Kuhns, "clearly referred to . . . Foster, the [c]ompany's dominant and controlling shareholder." Id. Kuhns refused to resign and two days later sent NanoFlex a notice of default, in which he demanded that NanoFlex cure its breaches of the Employment Agreement, including failure to pay him compensation he was owed, within 30 days.

Kuhns received a draft Form 10-K on Friday, March 27, 2015, and told Ledger and Fasnacht that he would provide comments the following week. He subsequently received an updated draft on Monday, and provided his comments that evening. Specifically, Kuhns stated that "[t]he manner in which we are offering our securities could engender an inquiry from the regulators. In that event, we would find it expensive and difficult to defend ourselves." Am. Compl. ¶ 26. He further noted that

> [e]ven though the [c]ompany is a registrant, its shareholders' ability to trade the [c]ompany's shares is extremely limited, and has not been adequately disclosed, as follows: 1) the [c]ompany has no market makers, in the absence of which trading may not take place; and 2) the [c]ompany's shares may not be uplisted to a better exchange without the approval of the exchange in question, which in turn is vague and generally depends on the [c]ompany doing an underwriting with a recognized broker/dealer. The [c]ompany has no such arrangements.

Id. Finally, he requested disclosure regarding the importance of a senior execu-

tive and the difficulties NanoFlex might face without him. Kuhns would not sign the draft Form 10-K without the requested changes.

The following day, Kuhns received a Notice of Termination, which stated that he was terminated for "Cause" as the Employment Agreement defined the term. Specifically, defendants fired him for allegedly breaching his fiduciary duties. Finally, the Notice of Termination stated that 67.26% of the shareholders had voted by written consent to remove Kuhns from the Board.

## DISCUSSION

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007). Nonetheless, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id.

## I. Dodd-Frank Retaliation Claim

Defendants seek dismissal of Count One, which alleges that NanoFlex violated the whistleblower protection provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") when it fired him, allegedly in retaliation for his statements to Ledger to stop mak-

ing fraudulent statements to investors and for his comments on the draft Form 10-K. NanoFlex contends that Count One fails as a matter of law, because Kuhns failed to properly report under the statute and because he did not reasonably believe that the conduct he identified constituted a violation of the securities laws. Kuhns' first count survives, because his amended complaint sufficiently pleads that he reported conduct that he reasonably believed constituted securities fraud to an employee of NanoFlex who possessed "the authority to investigate, discover, or terminate misconduct." 18 U.S.C. § 1514A(a)(1)(C).

### A. Legal Standard

The whistleblower protection provision of Dodd-Frank provides that

[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

(i) in providing information to the [Securities and Exchange] Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the [Securities and Exchange] Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sar-

banes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-l(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u–6(h)(1)(A). The Sarbanes-Oxley Act of 2002, cross-referenced in Section 78u–6(h)(1)(A)(iii), prohibits retaliation against an employee because that employee reports to "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)," 18 U.S.C. § 1514A(a)(1)(C), information he or she reasonably believes constitutes, inter alia, "any rule or regulation of the [Securities and Exchange Commission], or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1).

### B. Application

Defendants argue that Kuhns did not report to a person empowered "to investigate, discover, or terminate misconduct." [1] 18 U.S.C. § 1514A(a)(1)(C). Principally, they argue that an employee must report to someone more senior in the organization's hierarchy in order to seek protection under the anti-retaliation provision of Dodd-Frank. Their argument relies on the grammatical structure of the provision at issue: an employee is entitled to protection if he or she reports to "a person with supervisory authority over the employee (or such other person working for the em-

---

1. In their initial memorandum of law in support of their motion to dismiss, defendants argued that Kuhns did not properly report, because he did not provide any information to the Securities and Exchange Commission and Dodd-Frank forbids retaliation against "whistleblower[s]," 15 U.S.C. § 78u–6(h)(1)(A), where "whistleblower" is defined as "any individual who provides ... information relating to a violation of the securities laws to the [Securities and Exchange] Commission." 15 U.S.C. § 78u–6(a)(6). However, after the filing of defendants' opening brief, the Second Circuit issued its opinion in Berman v. Neo@ Ogilvy LLC, in which it held that an employee who, prior to the alleged retaliation of his employer, reported to his employer alone did not thereby forfeit his ability to pursue a Dodd-Frank anti-retaliation suit. 801 F.3d 145, 155 (2d Cir.2015). Therefore, binding precedent forecloses defendants' opening argument.

438

ployer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A(a)(1)(C). Because the phrase Kuhns relies on appears in a parenthetical, defendants argue, it functions as an "explanatory phrase[ ] that narrow[s] in on the precise meaning of [the] prior more general phrase." Defs.' Reply Mem. of Law in Supp. of their Mot. to Dismiss Portions of the Amended Compl. at 4 n.5 (internal quotation marks omitted). Therefore, the phrase " (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)" limits "a person with supervisory authority over the employee," and Kuhns must report to an employee senior to him to receive protection under the provision.

■ Such a reading of the statute is untenable. "Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." Dobrova v. Holder, 607 F.3d 297, 301 (2d Cir.2010)(alteration and internal quotation marks omitted). Here, the two relevant phrases, "a person with supervisory authority over the employee" and "such other person working for the employer who has the authority to investigate, discover, or terminate misconduct," are separated by "or," and "[c]anons of construction indicate that terms connected in the disjunctive in this manner be given separate meanings." Garcia v. United States, 469 U.S. 70, 73, 105 S.Ct. 479, 83 L.Ed.2d 472, (1984); see also United States v. Woods, —— U.S. ——, 134 S.Ct. 557, 566–67, 187 L.Ed.2d 472 (2013) (interpreting the statutory phrase "the value of any property (or the adjusted basis of any property)" and giving independent meaning to "the value of any property" and "the adjusted basis of any property"). While the use of parentheses may indicate an appositive, it does not do so here: the use of "such other person" indicates that the parentheses refers to someone other than "a

person with supervisory authority over the employee."

Kuhns additionally argues that "such other person" must refer to "a specific authorized person, and not to any person at all." Defs.' Reply at 4 (emphasis in original). We agree, but not because, as defendants argue, the phrase appears in a parenthetical modifying the remainder of the provision, but rather because "such other person" is expressly so limited: it must be someone with "the authority to investigate, discover, or terminate misconduct." 18 U.S.C. § 1514A(a)(1)(C). Relatedly, defendants contend that the use of "misconduct" without an article indicates that "such other person" must have the power to investigate, discover, or terminate all misconduct. Again, we agree, but do not see how this argument adds anything to the analysis: defendants have provided no reason to think that the co-CEO is not such a person. Therefore, Ledger qualifies as "such other person working for the employer who has the authority to investigate, discover, or terminate misconduct." 18 U.S.C. § 1514A(a)(1)(C).

■ Defendants further contend that the amended complaint does not properly allege that Kuhns reasonably believed that Ledger's conduct constituted securities fraud. Section 1514A protects reporting employees that "reasonably believe[ ]" that the conduct he or she reports "constitutes a violation of . . . any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). "A reasonable belief contains both subjective and objective components." Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 221 (2d Cir.2014). "The objective prong of the reasonable belief test focuses on the basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience." Id. (internal quotation marks omitted). Defendants argue

that Kuhns' comment on the draft Form 10-K that "[t]he manner in which we are offering our securities could engender an inquiry from the regulators," Am. Compl. ¶ 26, fails to allege a reasonable and subjective belief because it does not refer to any particular violations of law, but only actions that would draw regulator scrutiny.[2] See Defs.' Reply at 7; June 23, 2016 Tr. at 23:21-24:4. This argument is unavailing.

First, in arguing that the form of words used by Kuhns failed to identify the violation of law he believed Ledger had committed, defendants urge us, in sum and substance, to dismiss the Dodd-Frank claim unless Kuhns "definitively and specifically" alerted management that one of the varieties of fraud enumerated in Section 1514A had taken place. While an unpublished summary order adopted this standard, see Vodopia v. Koninklijke Philips Elecs., N.V., 398 Fed.Appx. 659, 662–63 (2d Cir.2010), the Second Circuit has subsequently rejected that test, and held that "relief pursuant to § 1514A turns on the reasonableness of the employee's belief that the conduct violated one of the enumerated provisions." Nielsen, 762 F.3d at 221 (emphasis in original).

Second, the comment that Kuhns provided on the draft Form 10-K—that "[t]he manner in which we are offering our securities could engender an inquiry from the regulators" and "[i]n that event, we would find it expensive and difficult to defend ourselves," Am. Compl. ¶ 26—sufficiently alleges that Kuhns subjectively believed that defendants' conduct violated the securities laws, and such a belief is not unreasonable as a matter of law. Regarding Kuhns' subjective belief, while defendants

argue that "[a]nything could engender such an inquiry," Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss Portions of the Am. Compl. at 12 (emphasis in original), it is reasonable to interpret Kuhns' statement that "[t]he manner in which we are offering our securities could engender an inquiry from the regulators" as expressing a concern that this conduct would raise regulator interest because it is illegal. It is further reasonable to interpret the following sentence of Kuhns' comment, that "[i]n that event, we would find it expensive and difficult to defend ourselves," as expressing the belief that NanoFlex would find it difficult to defend itself because it had violated the law. Further, Kuhns has alleged an objective basis for a belief that defendants' conduct violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities and Exchange Commission's Rule 10b-5, which "prohibit making any material misstatement or omission in connection with the purchase or sale of any security." Halliburton Co. v. Erica P. John Fund, Inc., —— U.S. ——, 134 S.Ct. 2398, 2407, 189 L.Ed.2d 339 (2014). According to the amended complaint, Ledger lied to investors regarding the company's valuation and its prospects for listing on a national exchange. Such allegations are sufficient to survive a 12(b)(6) motion.

Finally, defendants do not address Kuhns' other statements relevant to this claim. Kuhns alleges that he "told Ledger on multiple occasions to cease his fraudulent behavior," Am. Compl. ¶ 12, which clearly sufficiently alleges a subjective belief that Ledger's actions constituted securities fraud, and we have already determined that Ledger's conduct provided an

**2.** We do not consider defendants' argument, raised for the first time in a footnote in their reply brief, that Kuhns' comments on the draft Form 10-K cannot be a contributing factor in his termination. See Playboy Enters., Inc. v. Dumas, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997)("Arguments made for the first time in a reply brief need not be considered by a court."), aff'd, 159 F.3d 1347 (2d Cir. 1998).

objective basis for Kuhns' belief. While defendants discount Kuhns' oral statements to Ledger, there is no requirement that the provision of information pursuant to Section 1514A must be in writing. See Leshinsky v. Telvent GIT, S.A., 942 F.Supp.2d 432, 442, 444–48 (S.D.N.Y.2013)(denying defendants' motion for summary judgment where oral statement regarding potential mail and wire fraud was objectively reasonable and plaintiff provided sufficient evidence of his subjective belief).

## II. Control Person

Defendants move for dismissal of Count Two of the amended complaint, which seeks to hold Foster jointly and severally liable for NanoFlex's alleged violation of the anti-retaliation provision of Dodd-Frank, as, they contend, Foster is not a "control person" as that term is defined. Defendants' motion to dismiss Count Two is granted.

### A. Legal Standard

Section 20(a) of the Exchange Act provides that:

> [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . ., unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). "To state a claim of control person liability under § 20(a), a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." Carpenters Pension Trust Fund of St. Louis v. Barclays PLC, 750 F.3d 227, 236 (2d Cir.2014)(internal quotation marks omitted).

■ A person exercises control within the meaning of the statute when he or she "possesse[s] 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1473 (2d Cir.1996)(quoting 17 C.F.R. § 240.12b–2). Actual control, and not merely "power to influence managerial decisions" is required. In re BioScrip, Inc. Sec. Litig., 95 F.Supp.3d 711, 740 (S.D.N.Y.2015). "Typically, a control person is a parent corporation, the employer of the primary violator, or a director or officer of the primary violator corporation." Kalin v. Xanboo, Inc., 526 F.Supp.2d 392, 404 (S.D.N.Y. 2007).

### B. Application

■ Kuhns has failed to allege that Foster actually controlled NanoFlex, and his Section 20(a) claim is therefore dismissed. In his amended complaint, Kuhns alleges that Foster owned 47% of NanoFlex's common stock, Am. Compl. ¶ 6 and that when Fasnacht called Kuhns and asked him to resign, he told Kuhns that he acted on behalf of "the shareholders," who found the SLS proposal "unacceptable." Am. Compl. ¶ 24. According to the amended complaint, Fasnacht's reference to "the shareholders" clearly referred to Foster.[3]

---

**3.** The remaining allegations regarding Foster are conclusory, see, e.g., id. ¶ 28 ("As the control shareholder in NanoFlex Power, defendant Foster directed and supported the fraudulent scheme implemented by Ledger and Fasnacht."); id. ("Both men no doubt alerted Foster that Kuhns was prepared to

Based on these allegations, Kuhns has failed to plead that Foster actually controlled, as opposed to substantially influenced, NanoFlex. While a firm's largest minority shareholder will no doubt exercise considerable sway over that entity, he or she does not have the formal ability to control a company, and a minority equity stake is insufficient to demonstrate actual control. See Silsby v. Icahn, 17 F.Supp.3d 348, 371 (S.D.N.Y.2014) (Section 20(a) claim dismissed against individual defendant who was allegedly controlled entity's largest shareholder).

The cases cited by Kuhns are distinguishable or inapposite. The court in Duncan v. Pencer held that plaintiff's allegations of control sufficed at the pleading stage where the complaint pleaded that the allegedly controlling defendants, in addition to owning stock in the allegedly controlled entity, but also held positions with that firm as officers or directors and had access to a significant amount of material non-public information. No. 94 Civ. 321 (LAP), 1996 WL 19043, at *18 (S.D.N.Y. Jan. 18, 1996). Kuhns does not allege that Foster served as a corporate officer or director, or that he had access to a comparable amount of material non-public information. The In re Parmalat Securities Litigation Court found actual control sufficiently alleged where the allegedly controlling entities owned 99.6% or 100% of the allegedly controlled entities, 376 F.Supp.2d 472, 516 (S.D.N.Y.2005), figures that obviously represent a majority stake. Finally, Kuhns' citation to In re Global Crossing, Ltd. Securities Litigation for the proposition that "even if the specific facts alleged by plaintiffs, taken alone, would not be enough to establish actual control

..., dismissal is improper as long as it is at least plausible that plaintiff could develop some set of facts that would pass muster, No. 02 CIV. 910 (GEL), 2005 WL 2990646, at *8 (S.D.N.Y. Nov. 7, 2005)(emphasis in original), is unavailing, as that court relied on the Second Circuit's then-binding decision in Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir.2005), a case that the Supreme Court subsequently overruled, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## III. Wrongful Interference with Contract

Defendants seek dismissal of Count Five, which alleges wrongful interference with contract, against Foster on the grounds that he cannot be held liable simply for voting his shares. Count Five is dismissed against Foster.

### A. Legal Standard

■■■ "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party; defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1375 (1996). "In response to such a claim, a defendant may raise the economic interest defense—that it acted to protect its own legal or financial stake in the breaching party's business." White Plains Coat & Apron Co. v. Cintas Corp., 8 N.Y.3d 422, 426, 835 N.Y.S.2d 530, 867

expose their fraudulent devices and Foster decided that his interests were better served with dishonest operators."); id. ("Given Foster's dominant, control position, Ledger and Fasnacht would never have acted unless Foster directed and approved their course of action."), and therefore "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

N.E.2d 381, 383 (2007). A plaintiff can overcome this defense by "a showing of malice or illegality." Foster v. Churchill, 87 N.Y.2d 744, 750, 642 N.Y.S.2d 583, 665 N.E.2d 153, 156 (1996).

### B. Application

██ Foster has established the economic interest defense, and Kuhns has not shown that Foster acted with malice or through illegal means. Kuhns himself alleges that Foster owns 47% of the outstanding shares of NanoFlex, giving him a significant interest in the management of the company. See IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F.Supp.2d 395, 406 (S.D.N.Y.2009) (private equity funds with significant stake in parent company of allegedly breaching counter-claim defendant privileged to interfere with contract absent allegations of malice, fraud, or illegality); see also White Plains Coat & Apron Co., 8 N.Y.3d at 426, 835 N.Y.S.2d 530, 867 N.E.2d at 383 (defendants who are "significant stockholders in the breaching party's business" may raise the economic interest defense). With respect to malice, Kuhns himself pleads that maintaining the value of his shares motivated Foster, rendering Kuhns conclusory allegation of malice, see Am. Compl. ¶ 54 ("Foster ... with malice towards Kuhns interfered" with the Employment Contract.), implausible. See Morrison v. Frank, 81 N.Y.S.2d 743, 744 (Sup.Ct.1948)("The averment that defendant's acts were motivated solely by an intent to benefit himself negatives the allegation of malice."). With respect to illegal means, Kuhns' non-conclusory facts regarding Foster's participation in the alleged scheme amount to an allegation that Fasnacht sought Kuhns' removal on behalf of "the shareholders," who found the SLS Holdings proposal unacceptable, that Foster never sought Kuhns' perspective on the disputes that arose with Ledger and Fasnacht, id. ¶ 28, and that Foster voted his shares in favor of Kuhns'

termination. These allegations clearly do not permit an inference that Foster had any involvement in an allegedly retaliatory scheme undertaken by Ledger and Fasnacht. To be sure, it is unlikely that Ledger and Fasnacht would take a significant action such as seeking the removal of NanoFlex's co-CEO and Executive Chairman without speaking to a shareholder with as large a stake as Foster. However, allegations of Foster's displeasure with the SLS Proposal and the manager who obtained it, and his decision to vote his shares in favor of his removal, do not make it plausible that he conspired with Ledger and Fasnacht to remove Kuhns as part of a fraudulent scheme to inflate the value of his shares.

## IV. Breach of Fiduciary Duty

Defendants seek dismissal of Count Six, which alleges that Ledger and Fasnacht breached their fiduciary duties by allegedly making false statements to shareholders in connection with obtaining written consents to remove Kuhns as a director, on the grounds that this claim must be brought derivatively. As Kuhns' fiduciary duty claim is unquestionably direct, defendants' motion is denied with respect to Count Six.

### A. Legal Standard

██ "Corporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation." Cohen v. Hattaway, 595 So.2d 105, 107 (Fla.Dist.Ct.App.1992). A plaintiff alleging a breach of fiduciary duty must plead that the defendant owed plaintiff a fiduciary duty that defendant breached and, in doing so, that defendant proximately caused plaintiff's damages. Gracey v. Eaker, 837 So.2d 348, 353 (Fla.2002). "[W]hether a stockholder's claim is deriva-

tive or direct ... must turn <u>solely</u> on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" <u>Tooley v. Donaldson, Lufkin & Jenrette, Inc.</u>, 845 A.2d 1031, 1033 (Del.2004).[4]

### B. Application

Defendants do not dispute that Kuhns is a shareholder, or that making false statements to the shareholders would qualify as a breach of their fiduciary duties. Rather, they contend that because Ledger and Fasnacht owe fiduciary duties to the company and its shareholders, and not to Kuhns individually, and because he seeks an injunction against the use of the written shareholder consents, he cannot pursue this claim as a direct action. Defendants are wrong.

 Kuhns alleges a duty of disclosure violation that "impaired the stockholders' right to cast an informed vote," and such claims are direct. <u>In re J.P. Morgan Chase & Co. S'holder Litig.</u>, 906 A.2d 766, 772 (Del.2006). Further, the relief requested—the invalidation of the written consents—is not derivative, as it vindicates the right of shareholders to an informed vote. <u>See</u> <u>Portnoy v. Cryo–Cell Int'l, Inc.</u>, 940 A.2d 43, 82 (Del.Ch.2008) (invalidation of a director election on the basis of violation of duty to disclose is "the remedy that best vindicates the interests of [the company's] <u>stockholders</u>" (emphasis added)). Therefore, defendants' motion to dismiss Count Six is denied.

4. While Florida law governs the fiduciary duties owed by directors to the company and its shareholders, "[t]he Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines" and so

### V. Declaratory Judgment

Finally, defendants seek dismissal of Count Seven, which seeks a declaratory judgment that Kuhns was not properly terminated as a director, because, they contend, such relief is duplicative of other relief sought in this litigation. Count Seven is dismissed.

### A. Legal Standard

 "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In determining whether exercise jurisdiction over an action for declaratory relief, a district court should analyze "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." <u>Dow Jones & Co. v. Harrods Ltd.</u>, 346 F.3d 357, 359 (2d Cir. 2003). In addition, we may also consider, <u>inter alia</u>, "whether there is a better or more effective remedy." <u>Id.</u> at 360. "[D]ismissal [of a declaratory judgment action] is warranted where ... the declaratory relief [plaintiff] seeks is duplicative of his other causes of action." <u>Catalano v. BMW of N. Am., LLC</u>, 167 F.Supp.3d 540, 563, No. 15–CV–4889 (KBF), 2016 WL 844832, at *16 (S.D.N.Y. Mar. 1, 2016).

### B. Application

Defendants' motion to dismiss Count Seven is granted, as the declaratory relief sought is duplicative of Kuhns' fiduciary

"[w]e rely with confidence upon Delaware law to construe Florida corporate law." <u>Int'l Ins. v. Johns</u>, 874 F.2d 1447, 1459 n. 22 (11th Cir.1989).

duty claim. If Kuhns prevails on his fiduciary duty claim, the shareholder vote will be void. See Pearson v. First Fed. Sav. & Loan Ass'n of Tarpon Springs, 149 So.2d 891, 895 (Fla.Dist.Ct.App.1963). As this relief is exactly the same as that sought on the declaratory judgment claim, see Mem. of Law in Opp. to Defs. Mot. to Dismiss at 25, and proceeds on the same theory, i.e., that Ledger and Fasnacht made false statements to the shareholders in obtaining their written consents, Count Seven is duplicative of Count Six and is therefore dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted as to Counts Two, Five (as to defendant Foster), and Seven and denied as to Counts One and Six. This Memorandum and Order resolves docket no. 11. Defendants are instructed to file an answer within 21 days of the entry of this Memorandum and Order.

**SO ORDERED.**