[867 NE2d 381, 835 NYS2d 530]

WHITE PLAINS COAT & APRON CO., INC., Appellant, v CINTAS CORP. et al., Respondents.

Argued March 20, 2007; decided April 26, 2007

## POINTS OF COUNSEL

*Mayer, Brown, Rowe & Maw LLP* (*Lee Rubin* of the California bar, admitted pro hac vice, of counsel) and *Mayer, Brown, Rowe & Maw LLP*, Los Angeles, California (*Todd Lundell* of counsel), for appellant. I. New York law protects existing contracts against a competitor's interference and does not provide a justification defense based solely on defendant's interest in soliciting new business. (*Posner Co. v Jackson*, 223 NY 325; *Israel v Wood Dolson Co.*, 1 NY2d 116; *Bernberg v Health Mgt. Sys.*, 303 AD2d 348; *P. Kaufmann, Inc. v Americraft Fabrics, Inc.*, 198 F Supp 2d 466; *Akcess Pac. Group LLC v Winstar Communications Inc.*, 67 F Supp 2d 394; *American Para Professional Sys. v Examination Mgt. Servs.*, 214 AD2d 413; *Kaminski v United Parcel Serv.*, 120 AD2d 409; *Pyramid Brokerage Co. v Citibank [N.Y. State]*, 145 AD2d 912; *KSL Recreation Corp. v Boca Raton Hotel & Club Ltd. Partnership*, 168 Misc 2d 18; *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183.) II. The District Court's rule would obliterate the sensible distinction between contract interference and interference with prospective business relations. (*Carvel Corp. v Noonan*, 3 NY3d 182; *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183; *NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614.)

*Harris Beach PLLC*, Pittsford (*A. Vincent Buzard* and *Laura W. Smalley* of counsel), and *Keating Muething & Klekamp, PLL* (*Steven C. Coffaro* of the Ohio bar, admitted pro hac vice, of counsel) for respondents. I. Under New York law, knowledge that the customer is using the goods is not sufficient to prove actual knowledge of the contract in proving a tortious interference claim; as such, White Plains Coat & Apron Co., Inc. failed to establish an element of its prima facie case. (*Foster v Churchill*, 87 NY2d 744; *A A Tube Testing Co. v Sohne*, 20 AD2d 639; *Bogoni v Friedlander*, 197 AD2d 281; *Burns Jackson Miller Summit & Spitzer v Lindner*, 88 AD2d 50, 59 NY2d 314; *Roulette Records v Princess Prod. Corp.*, 15 AD2d 335, 12 NY2d 815; *J&L Am. Enters., Ltd. v DSA Direct, LLC*, 10 Misc 3d 1076[A], 2006 NY Slip Op 50101[U]; *LinkCo, Inc. v Fujitsu Ltd.*, 230 F Supp 2d 492; *Pattison-Bolson Rug Serv. v Sloane*, 45 AD2d 862; *Riordan v Nationwide Mut. Fire Ins. Co.*, 977 F2d 47; *Carvel Corp. v Noonan*, 3 NY3d 182.) II. A competitor conducting its business to sell its goods and solicit business in

the normal course where it knows that the customer is receiving goods from plaintiff but does not know plaintiff has an enforceable contract with the customer should not be liable for tortious interference absent malice or improper means. (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183; *Foster v Churchill*, 87 NY2d 744; *Felsen v Sol Cafe Mfg. Corp.*, 24 NY2d 682; *Rossi v Kelly*, 96 AD2d 451; *State Enters. v Southridge Co-op. Section 1*, 18 AD2d 226; *Carvel Corp. v Noonan*, 3 NY3d 182.)

## OPINION OF THE COURT

Chief Judge KAYE.

Plaintiff, White Plains Coat & Apron Co., Inc., is a New York-based linen rental business. Its competitor, defendant Cintas Corp., is a nationwide business that rents similar products to commercial customers. White Plains alleges that it had five-year exclusive service contracts with customers and that, knowing of these arrangements, Cintas nonetheless induced dozens of White Plains' customers to breach their contracts and enter into rental agreements with Cintas. White Plains by letter demanded that Cintas desist solicitation and discontinue servicing White Plains' contract customers, enclosing a list of customers allegedly solicited improperly. Cintas denied knowledge of any contracts and continued its solicitation.

White Plains sued Cintas in United States District Court for the Southern District of New York for tortious interference with existing customer contracts. After discovery, Cintas sought summary judgment, arguing that it had no knowledge of contracts with White Plains and had not induced any breach. While noting "a small element of doubt" in New York law (and itself suggesting a need for certification to this Court), the District Court granted summary judgment and dismissed the complaint, ruling orally that Cintas' legitimate interest as a competitor to solicit business and make a profit alone triggered the defense of economic justification. Given Cintas' economic interest, the court concluded, to survive summary judgment White Plains had to show that Cintas acted with malice or illegality, and failed to do so. The court later denied White Plains' motion for reconsideration, finding that defendant did not need an ownership interest in the breaching party's business in order to assert the economic interest defense.

On White Plains' appeal, the Court of Appeals for the Second Circuit reviewed New York's law on tortious interference with

contract, noting that procuring "the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong."[1] The court observed, however, that there was an important open state law question regarding the economic interest defense. While satisfied that the defense applies when the tortfeasor has a preexisting legal or financial relationship with the breaching party—not present in the case before us— the Second Circuit sought clarification as to the broader reach of the defense and therefore certified the following potentially dispositive question to us: "Does a generalized economic interest in soliciting business for profit constitute a defense to a claim of tortious interference with an existing contract for an alleged tortfeasor with no previous economic relationship with the breaching party?"[2] We answer that question in the negative.[3]

## Analysis

It is a familiar proposition that one "who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."[4] Though long a part of our law, this commonly asserted tort continues to generate a spate of decisions, with sometimes varying views. At bottom, as a matter of policy, courts are called upon to strike a balance between two valued interests: protection of enforceable contracts, which lends stability and predictability to parties' dealings, and promotion of free and robust competition in the marketplace.

While New York law recognizes the tort of interference with both *prospective* and *existing* contracts, "greater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be

---

1. *White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 460 F3d 281, 283 (2d Cir 2006), quoting *Foster v Churchill*, 87 NY2d 744, 750 (1996) (internal quotation marks omitted).

2. *Id.* at 289.

3. We are not called upon to, nor do we, address the other issues briefed and argued by defendant, including its alleged lack of knowledge of White Plains' contracts with its customers, the enforceability of any such contracts and the propriety of defendant's solicitation methods.

4. Restatement (Second) of Torts § 766.

derived from unfettered competition) than to the less substantive, more speculative interest in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer)."[5]

In a contract interference case—as here—the plaintiff must show the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages.[6] In response to such a claim, a defendant may raise the economic interest defense—that it acted to protect its own legal or financial stake in the breaching party's business. The defense has been applied, for example, where defendants were significant stockholders in the breaching party's business;[7] where defendant and the breaching party had a parent-subsidiary relationship;[8] where defendant was the breaching party's creditor;[9] and where the defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff.[10]

A defendant who is simply plaintiff's competitor and knowingly solicits its contract customers is not economically justified in procuring the breach of contract.[11] In other words, mere status as plaintiff's competitor is not a legal or financial stake in the breaching party's business that permits defendant's inducement of a breach of contract. We do not subscribe to the District Court's view that "the only answer . . . is to go out and do it also to the other guy." Rather, the answer is succinctly articulated in the New York Pattern Jury Instructions: "When the defendant is simply a competitor of the plaintiff seeking prospective customers and plaintiff has a customer under contract for a definite period, defendant's interest is not equal

---

**5.** *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191 (1980).

**6.** *Lama Holding Co. v Smith Barney*, 88 NY2d 413 (1996); *see also NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614 (1996); *Israel v Wood Dolson Co.*, 1 NY2d 116, 120 (1956).

**7.** *Felsen v Sol Cafe Mfg. Corp.*, 24 NY2d 682, 687 (1969); *Morrison v Frank*, 81 NYS2d 743 (1948); *see also Foster*, 87 NY2d at 751.

**8.** *American Protein Corp. v AB Volvo*, 844 F2d 56, 63 (2d Cir 1988), *cert denied* 488 US 852 (1988); *WMW Mach. Co. v Koerber AG.*, 240 AD2d 400, 401 (2d Dept 1997); *Koret, Inc. v Christian Dior, S.A.*, 161 AD2d 156, 157 (1st Dept 1990), *lv denied* 76 NY2d 714 (1990).

**9.** *Ultramar Energy v Chase Manhattan Bank*, 179 AD2d 592, 592-593 (1st Dept 1992).

**10.** *Don King Prods., Inc. v Smith*, 47 Fed Appx 12 (2d Cir 2002).

**11.** *See* Restatement (Second) of Torts § 768 (2).

to that of plaintiff and would not justify defendant's inducing the customer to breach the existing contract."[12] To conclude otherwise—to answer the certified question in the affirmative— would blur the distinction between tortious interference with existing, enforceable contracts and tortious interference with prospective contractual relations, where, as a matter of policy, the balance of interests is different.

Finally, we note that protecting existing contractual relationships does not negate a competitor's right to solicit business, where liability is limited to *improper* inducement of a third party to breach its contract. Sending regular advertising and soliciting business in the normal course does not constitute inducement of breach of contract.[13] A competitor's ultimate liability will depend on a showing that the inducement exceeded "a minimum level of ethical behavior in the marketplace."[14]

Accordingly, the certified question should be answered in the negative.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.

---

12. 2 NY PJI2d 3:56, at 507-508 (2007).
13. Restatement (Second) of Torts § 766, Comment *m* (1977).
14. *Guard-Life*, 50 NY2d at 200 (Cooke, Ch. J., dissenting in part); *see also V. Marangi Carting Corp. v Judex Enters.*, 171 Misc 2d 820 (Sup Ct, NY County 1997).