Egan Jr., J.
Appeal from an order of the Supreme Court (Ferradino, J.), entered January 12, 2012 in Saratoga County, which denied a motion by defendant J. Paul Vosburgh Architect, EC. for summary judgment dismissing plaintiffs fifth cause of action.
Beginning in October 2004, defendant Town of Charlton entered into a series of contracts in connection with the construction of its new town hall. Defendant J. Paul Vosburgh Architect, EC. (hereinafter defendant) was retained to provide design and contract administration services, defendant AKW Consulting, Inc. was hired to oversee and administer the construction project and plaintiff was awarded the general construction contract for the project. Insofar as is relevant here, defendant’s responsibilities included visiting the construction site at appropriate intervals, keeping the Town apprised as to the progress and quality of the work, guarding against defects and deficiencies in the work and reporting any deviations from the contract documents and construction schedule to the Town.
In December 2006, AKW sent a letter to the Town expressing its “continuing concern regarding the lack of progress” on the project and discussing—at some length—what it viewed as plaintiffs “general disregard of accepted construction means and methods” and “willful[ ] violation] [of] the law as well as the approved project plans and specifications.” Specifically, AKW asserted that plaintiff had failed to provide a detailed construction schedule, disregarded the recommendations made by a particular engineering consultant and ignored project specifications *1012 governing the placement and protection of concrete at the site. In the months that followed, concerns regarding plaintiffs progress and performance continued to mount and, in June 2007, plaintiff and its surety were advised that the Town was considering declaring plaintiff to be in default.
Prior to doing so, the Town retained Paul Carr, a consultant and engineering professor at Cornell University, to act as a “[p]roject [n]eutral” and, in that capacity, ascertain the cause of the construction delays and offer solutions. Following a visit to the site, review of pertinent documents and interviews with project participants, Carr issued a lengthy report in August 2007 wherein he concluded that “a heavy burden of responsibility for the current state of the . . . [pjroject rest[ed] with [plaintiff] and [its] failure to perform in accordance with the terms of the[ ] contract.” According to Carr, plaintiff failed to provide a schedule that satisfied “even the most rudimentary requirements of the [c]ontract [d]ocuments,” delayed in tendering required paperwork (bonds, insurance documents, executed contracts and the like), neglected to devote “adequate attention” to an issue concerning the roof trusses,[1] provided “an inadequate workforce” and demonstrated an “inability to coordinate the delivery of critical materials,” thereby evidencing “a pattern of performance failures.”
On September 5, 2007, the Town’s governing body met with the relevant entities—including plaintiff—to discuss Carr’s report, at which time plaintiff and its counsel were advised of certain requirements that needed to be met in order for plaintiff to continue as the general contractor. The parties reconvened one week later and, after finding that plaintiffs submissions “did not represent an adequate, sufficient or satisfactory response” to the requested materials, the Town exercised its rights under section 14.2.2 of its contract with plaintiff and declared plaintiff to be in default.[2]
Plaintiff thereafter commenced this action against defendant, the Town and AKW setting forth, insofar as is relevant here, a cause of action against defendant for tortious interference with contract. Following joinder of issue, Supreme Court granted *1013 defendant’s motion to dismiss the complaint against it for failure to state a cause of action. On appeal, this Court modified and reinstated the claim for tortious interference with contract (68 AD3d 1314 [2009]). Defendant then moved for summary-judgment dismissing that cause of action and Supreme Court denied the motion, prompting this appeal.
When this matter was last before us, we found that plaintiffs submissions—liberally construed—were sufficient to survive defendant’s motion to dismiss for failure to state a cause of action (id. at 1315; see generally CPLR 3211 [a] [7]). However, in opposing defendant’s subsequent motion for summary judgment pursuant to CPLR 3212, plaintiff was held to a higher burden; once defendant demonstrated its entitlement to judgment as a matter of law (see infra), plaintiff was required to come forward with sufficient admissible proof to raise a genuine question of fact—a burden that, in turn, cannot be satisfied with “conjecture, speculation or surmise” (Oefelein v CFI Constr., Inc., 45 AD3d 1002, 1004 [2007]). As plaintiffs proof fell short in this regard, we now reverse and grant defendant’s motion
To sustain a cause of action for tortious interference with contract, a plaintiff must show “(1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant’s knowledge of that contract, (3) the defendant’s intentional [and improper] inducement of the third party to breach that contract, and (4) damages” (Rosario-Suarz v Wormuth Bros. Foundry, 233 AD2d 575, 577 [1996]; see White Plains Coat & Apron Co., Inc. v Cintas Corp., 8 NY3d 422, 426 [2007]; 68 AD3d at 1316; Murray v SYSCO Corp., 273 AD2d 760, 761 [2000]). “This tort is not satisfied by conduct that is merely negligent or incidental to some other, lawful, purpose” (Harris v Town of Fort Ann, 35 AD3d 928, 929 [2006] [internal quotation marks and citation omitted]); rather, “the plaintiff must establish that the defendant’s procurement of the alleged breach was solely malicious” (Rosario-Suarz v Wormuth Bros. Foundry, 233 AD2d at 577 [internal quotation marks and citation omitted]; see Montano v City of Watervliet, 47 AD3d 1106, 1109-1110 [2008]; Murray v SYSCO Corp., 273 AD2d at 761-762). More to the point, “where, as here, an agent is alleged to have induced its principal to breach a contract, the agent cannot be found liable unless it does not act in good faith and commits independent torts or predatory acts directed at another for personal pecuniary gain” (68 AD3d at 1316 [emphasis added; internal quotation marks and citations omitted]; see First Am. Commercial Bancorp, Inc. v Saatchi & Saatchi Rowland, Inc., 55 AD3d 1264, 1266-1267 [2008], lv dismissed and denied 12 NY3d 829 [2009]; Bradbury v Cope-Schwarz, 20 AD3d 657, 659 [2005]).
*1014 In support of its motion for summary judgment, defendant tendered, among other things, a copy of its contract with the Town (outlining its obligations and responsibilities to guard against defects and deficiencies in the work), correspondence from AKW (documenting plaintiff’s role in the project’s delay and questioning plaintiffs ability to successfully complete the work required under its contract) and a copy of Carr’s detailed report (documenting plaintiffs failure to meet or comply with various contract requirements). Such proof, in our view, was more than sufficient to discharge defendant’s initial burden on the motion for summary judgment.
In opposition, plaintiff tendered, among other things, an affidavit from its president, Walter Schmidt, wherein Schmidt averred that defendant “arbitrarily rejected and reduced certifications for periodic payments,” “created an adversarial relationship” between plaintiff and the Town, “intentionally delayed [its] response to fifteen (15) separate requests for information” made by plaintiff and, “in bad faith, refused to provide the necessary design to enclose the roof so that [plaintiff’s] truss supplier could fabricate and place the final trusses.” Additionally, Schmidt testified at his examination before trial that it was his “personal belief that [defendant’s] intent was to delay this project, to the point that [defendant] could request additional compensation from the Town for [its] representation of [its] erroneous plans.” When pressed as to the basis for this belief, Schmidt replied that this was defendant’s “MO in [the] industry, [its] method of operation”—a conclusion that, in turn, was based upon hearing “stories” from other contractors who had worked with defendant.[3]
Even accepting that the foregoing proof, which largely consists of plaintiffs subjective interpretations of defendant’s conduct, is sufficient to raise a question of fact as to whether defendant acted outside the scope of its agency, i.e., did something other than discharge its responsibilities as project architect, and engaged in, among other things, bad faith, plaintiffs proof as a whole falls far short of demonstrating that defendant’s conduct resulted in plaintiffs termination. Specifically, in light of the documented concerns raised by AKW, Carr’s critical analysis of and conclusions regarding plaintiffs performance and plaintiffs *1015 failure to meet the requirements imposed by the Town at its September 5, 2007 meeting, plaintiff cannot establish that, “but for” defendant’s conduct, including the authoring of the September 2007 letter, the Town would not have declared plaintiff to be in default and terminated the underlying contract (see Sun Gold, Corp. v Stillman, 95 AD3d 668, 669 [2012]; Montano v City of Watervliet, 47 AD3d at 1110; cf. First Am. Commercial Bancorp, Inc. v Saatchi & Saatchi Rowland, Inc., 55 AD3d at 1267). Accordingly, defendant is entitled to summary judgment dismissing plaintiffs fifth cause of action.
Peters, P.J., Stein and Garry, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted and fifth cause of action dismissed.

. According to Carr, the roof trusses were a “critical path item,” the absence of which resulted in an “unrecoverable” delay.

. This provision allowed the Town to terminate plaintiffs contract “upon certification by the [a]rchitect that sufficient cause exist[ed] to justify such action.” Following the September 5, 2007 meeting, and in response to the Town’s request, defendant tendered a letter to that effect, certifying that “sufficient cause exist[ed] to conclude that [plaintiff] persistently or repeatedly failed to supply enough properly skilled workers or proper materials[ ] to perform its work on the project.”

. To that end, plaintiff submitted an affidavit from the owner and president of another prime contractor on the project echoing plaintiffs complaints of “delayed and ambiguous responses” to requests for information and “arbitrary” reductions in payment applications, as well as an affidavit from the owner and president of a subcontractor on the project attesting to discrepancies in defendant’s site drawings and the delays that purportedly flowed therefrom.