OPINION OF THE COURT
Lawrence H. Ecker, J.
The factual background of this case has been fully set forth *558 in the prior orders of the court (Connolly, J.), dated October 8, 2013 (41 Misc 3d 1217[A], 2013 NY Slip Op 51721[U] [Sup Ct, Westchester County 2013]), and (Lefkowitz, J.), dated January 6, 2014 (2014 NY Slip Op 30711[U] [Sup Ct, Westchester County 2014]). Shullman Family Limited Partnership is the owner and was formerly the landlord to plaintiffs of the premises located at 527 North Bedford Road, Bedford Hills, New York. Plaintiffs are affiliated limited liability companies and their principal members who formerly operated a car wash at the premises. During the final extension on their lease that was due to expire on April 30, 2013, and after both parties knew the lease would not be renewed, plaintiffs signed a lease in 2010 for new premises at 562-570 North Bedford Road to move their car wash business to that location, a short distance from the original premises. The new lease was made contingent upon plaintiffs obtaining the required variances, permits, and approvals from the Town of Bedford Zoning Board of Appeals and Planning Board to allow the plaintiffs to construct and operate a car wash at the new location. Plaintiffs sought and eventually obtained the required municipal approvals to develop the property.
Plaintiffs commenced the instant action against defendants on April 30, 2013, the same day as the lease at 527 North Bed-ford Road was due to expire. Plaintiffs allege causes of action for tortious interference with business relations, breach of implied covenant of good faith, intentional property damage, negligent property damage and failure to return security deposit. Specifically, plaintiffs allege the municipal hearing and approval process was delayed as a result of the defendants’ actions in secretly soliciting Dino DeFeo and Greg DiNapoli, two local residents objecting to plaintiffs’ application before the Town of Bedford Zoning Board of Appeals (ZBA) and Planning Board. Plaintiffs allege defendants did so in an effort to cause the plaintiffs economic harm by preventing them from relocating their car wash business. Plaintiffs allege that the defendants acted in bad faith and with actual malice by secretly retaining a land use attorney and various experts, including traffic and noise experts, to have DeFeo and DiNapoli oppose the plaintiffs’ applications and file legal proceedings to stop or delay the plaintiffs from establishing their car wash at the new location. The plaintiffs further allege that the defendants instructed the land use attorney and the experts to fraudulently misrepresent to the officials of the Town of Bedford that they had been hired and retained by DeFeo and DiNapoli, when *559 they were, in fact, selected, hired, retained, and paid by the defendants.
Plaintiffs further claim that as the result of the defendants’ bad faith actions in opposing, obstructing, and delaying the approval process, plaintiffs failed to receive the necessary variances, special use permits, and site plan approval with sufficient time to build their car wash at the new location and reestablish their business before their lease expired on April 30, 2013, which forced them to hold over in the former leased premises with defendants. Plaintiffs allege defendants acted with actual malice and with the intent to cause the plaintiffs economic harm in that the defendants planned to open their own car wash business at the existing location and misappropriate the plaintiffs’ customers and business to themselves.
Plaintiffs also assert causes of action for intentional and negligent property damage, claiming that they sustained property damage when the defendants’ agents or employees intentionally, carelessly, or negligently punctured the waterproof materials on the roof of the premises while performing a site inspection in March 2013, which caused extensive quantities of water to leak into the premises. They also seek the return of their original security deposit with interest.
After the Town of Bedford approved plaintiffs’ land use applications for the new business location, nonparty Dino DeFeo commenced a CPLR article 78 proceeding against Bedford and certain of the plaintiffs to annul the Town’s determination. (DeFeo v Zoning Bd. of Appeals of Town of Bedford, Sup Ct, Westchester County, index No. 1178/2013.) By decision and order, dated October 4, 2013, this court (Zambelli, J.) denied so much of DeFeo’s article 78 petition as sought to annul the Planning Board’s “negative declaration” under the State Environmental Quality Review Act (SEQRA), but annulled the Town’s determination to grant use variances, holding the Zoning Board of Appeals had granted them without rational basis. The court also vacated as moot the area variances, special use permits and site plan. Both sides appealed. On March 23, 2016, the judgment was affirmed by the Appellate Division, Second Department (137 AD3d 1123 [2d Dept 2016]).
After plaintiffs held over in their tenancy at the former premises following the lease expiration on April 30, 2013, a summary eviction proceeding ensued. The Bedford Town Court (Jacobson, J.) granted the eviction petition and plaintiffs vacated the premises by the stayed eviction date of September *560 30, 2013. They subsequently took occupancy and possession of the leased premises at 562-570 North Bedford Road where they operate a car wash.
Now pending before the court are two defense motions:
Motion sequence No. 11: The motion of defendant Russell Speeder’s Car Wash, LLC (Speeder), made pursuant to CPLR 3212, for summary judgment dismissing the complaint on the basis that Russell Speeder’s Management Company LLC has been improperly sued as Russell Speeder’s Car Wash, LLC and seeking the imposition of sanctions, including attorney’s fees, against plaintiffs.
Motion sequence No. 12: The motion of defendants Shullman Family Limited Partnership, Robert Shullman and Michael Shullman (SFLP), made pursuant to CPLR 3212, for summary judgment dismissing the complaint on the lack of merit of all the causes of action, and that no triable issues of fact exist that would warrant a trial.
Discussion
Summary judgment is a drastic remedy that deprives a litigant of his or her day in court, and it should be granted only where the moving party has “tender [ed] sufficient evidence to demonstrate the absence of any material issues of fact” (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). To grant summary judgment, it must clearly appear that no material and triable issue of fact is presented. Issue finding, rather than issue determination, is the key to the procedure. (Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178 [1994]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957].) In making this determination, the court must view the evidence in the light most favorable to the party opposing the motion, and must give that party the benefit of every inference which can be drawn from the evidence. (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013]; Nash v Port Wash. Union Free School Dist., 83 AD3d 136, 146 [2d Dept 2011]; Pearson v Dix McBride, LLC, 63 AD3d 895 [2d Dept 2009].) “[E]very available inference must be drawn in the [non-moving party’s] favor.” (De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016].)
It is not the court’s function on a motion for summary judgment to assess credibility (Chimbo v Bolivar, 142 AD3d 944 [2d Dept 2016]; Garcia v Stewart, 120 AD3d 1298, 1299 [2d Dept *561 2014]), or to engage in the weighing of evidence. (Scott v Long Is. Power Auth., 294 AD2d 348 [2d Dept 2002].) Thus a motion for summary judgment “should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility” (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010]).
The moving party is entitled to summary judgment only if it tenders evidence sufficient to eliminate all material issues of fact from the case. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) Failure to make such prima facie “showing requires denial of the motion, regardless of the sufficiency of the opposing papers.” (Pullman v Silverman, 28 NY3d 1060, 1062 [2016]; Winegrad v New York Univ. Med. Ctr.) Put another way, “[i]n order to obtain summary judgment there must be no triable issue of fact presented and . . . even the color of a triable issue of fact forecloses the remedy.” (Matter of Cuttitto Family Trust, 10 AD3d 656, 657 [2d Dept 2004], quoting L.N.L. Constr. v M.T.F. Indus., 190 AD2d 714, 715 [2d Dept 1993].) If a party makes a prima facie showing of its entitlement to summary judgment, the opposing party bears the burden of establishing the existence of a triable issue of fact. (Zuckerman v City of New York; Alvarez v Prospect Hosp.)
Motion Sequence No. 11
Speeder initially urges that Russell Speeder’s Management Company LLC has been improperly sued as Russell Speeder’s Car Wash, LLC. It contends that summary judgment is warranted as there is no evidence that Speeder, a Connecticut limited liability company not licensed to conduct business in the State of New York, had any legal relationship to the premises or any connection with the acts alleged in the complaint. It was acting solely as manager for a car wash under the Russell Speeder’s Car Wash trade name. Specifically, it had no involvement with the leases entered into between plaintiffs and the other defendants.
In opposition, on this point, plaintiffs point out that defendant Michael Shullman signed a retainer agreement to pay the legal fees of David J. Squirrel of Banks, Curran, Schwan & Squirrel, LLP to represent DeFeo and DiNapoli, to oppose plaintiffs’ land use application at the new location. The retainer agreement is addressed to Shullman, Russell Speeder’s Car Wash in Norwalk, Connecticut (plaintiffs’ exhibit J). Further documentation has been provided that records of the Connecti *562 cut Secretary of State indicate Russell Speeder’s Car Wash, LLC and Russell Speeder’s Management Company share the same business address and both are managed by Michael Shullman (defendants’ exhibit 4; plaintiffs’ exhibit D).
The court declines to grant summary judgment on the basis that plaintiffs have improperly named Russell Speeder’s Car Wash, LLC as a defendant. Whether plaintiffs sued the wrong corporate entity is a triable issue of fact, as not capable of resolution on these submissions.
While Speeder has not specifically addressed the five causes of action and its entitlement to dismissal on the merits, the court will do so in conjunction with SFLP’s motion for summary judgment which did assert their lack of individual and collective merit.
Motion Sequence Nos. 11, 12
First Cause of Action: Tortious Interference with Business Relations
Plaintiffs allege tortious interference with business relations, as well as tortious interference with prospective business relations. The complaint appears to conflate the two torts (compare amended complaint at 5 [First Cause of Action: “Tor-tious Interference with Business Relations”], and ¶ 26 [a], with f 30, and plaintiffs’ mem of law at 11-12, citing PJI 3:57 [“Interference with Prospective Economic Relations”]). However, they are not the same. In NBT Bancorp v Fleet/Norstar Fin. Group (87 NY2d 614 [1996]), the Court differentiated the separate tortious acts as follows:
“[W]here there is an existing, enforceable contract and a defendant’s deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. [However,] [w]here there has been no breach of an existing contract, but only interference with prospective [economic relations], . . . plaintiff must show more culpable conduct on the part of the defendant.” (Id. at 621 [citations omitted].)
“[G]reater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition) than to the less substantive, more speculative interest in a pro *563 spective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer)” (Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 191 [1980]).
“Tortious interference with business relations ‘applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant’ ” (M.J. & K. Co. v Matthew Bender & Co., 220 AD2d 488, 490 [2d Dept 1995], quoting WFB Telecom, v NYNEX Corp., 188 AD2d 257, 257 [2d Dept 1992]).
“While New York law recognizes the tort of interference with both prospective and existing contracts, ‘greater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition) than to the less substantive, more speculative interest in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer).’ ” (White Plains Coat & Apron Co., Inc. v Cintas Corp., 8 NY3d 422, 425-426 [2007].)
To state a cause of action “for tortious interference with business relationships, a plaintiff must show that the defendant interfered with the plaintiff’s business relationships either with the sole purpose of harming the plaintiff or by means that were unlawful or improper” (Nassau Diagnostic Imaging & Radiation Oncology Assoc. v Winthrop-University Hosp., 197 AD2d 563, 563-564 [2d Dept 1993]). The elements of a cause of action for tortious interference with a contract are:
1. the existence of a valid contract between the plaintiff and a third party;
2. the defendant’s knowledge of the contract;
3. the defendant’s intentionally procuring of the breach of that contract; and
4. damages (PJI 3:56; MVB Collision, Inc. v Allstate Ins. Co., 129 AD3d 1041 [2d Dept 2015]; Rose v Different Twist Pretzel, Inc., 123 AD3d 897 [2d Dept 2014]).
Here, plaintiffs are unequivocal that “[t]he contract being interfered with herein is the plaintiffs’ lease for the New Location, which is contingent upon obtaining the necessary permits and approvals to construct the new car wash facility at 562- *564 570 North Bedford Road, Bedford Hills, New York” (plaintiffs’ mem of law at 4). Yet, plaintiffs offer no evidence that defendants’ actions resulted in a breach of plaintiffs’ lease for the new location. The record facts establish a delay ensued in the opening of the new car wash facility after a successful legal challenge to plaintiffs’ original land use application to the Town of Bedford ZBA. The successful legal challenge was apparently underwritten by defendants for the aggrieved plaintiff residents in the article 78 proceeding. But plaintiffs are unable to establish a critical element of their claim, i.e., a breach of contract with the third-party landlord at 562-570 North Bedford Road, any more than they can point to any illegality on the part of defendants.
They fare no better in the prosecution of a claim of tor-tious interference with a prospective business relationship, a tort never expressly pleaded, but intermingled in their arguments. To establish a cause of action alleging tortious interference with prospective business relationships, a plaintiff must demonstrate, inter alia, that the defendant interfered by means that were “not lawful,” to wit, “the . . . [defendant’s] conduct [must] amount [ ] to a crime or an independent tort,” or must be done “for the sole purpose of inflicting intentional harm on plaintiff.” (2A NY PJI2d 3:57 at 584 [2017]; Carvel Corp. v Noonan, 3 NY3d 182, 189-190 [2004]; Holliswood Owners Corp. v Rivera, 145 AD3d 968, 970 [2d Dept 2016].) For a defendant’s interference to constitute the kind of “wrongful means” that will support a claim for tortious interference with prospective economic relationship, one of the following must be true: (1) the conduct must amount to an independent crime or tort; (2) the conduct must have been solely out of malice; or (3) the conduct must amount to “extreme and unfair” economic pressure. (Friedman v Coldwater Cr., Inc., 551 F Supp 2d 164, 170 [SD NY 2008].) Plaintiffs do not suggest defendants’ conduct was unlawful or illegal, but rather describe defendants’ actions as “unethical conduct,” “fraudulent misrepresentations,” “malicious conduct” and a host of other unflattering terms. However, they fall short of offering proof that defendants’ conduct was for the sole purpose of inflicting intentional harm on plaintiffs. Rather, defendants’ motives plainly fall into the category of “normal economic self-interest” (Carvel Corp. v Noonan at 190).
As the Court in Guard-Life Corp. cautioned,
“Although his status as a competitor does not protect the interferer from the consequences of his *565 interference . . . with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful restraint of trade is effected, and the means employed are not wrongful. ‘Wrongful means’ include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure.” (Guard-Life Corp., 50 NY2d at 190-191.)
“[C]ivil suits and threats thereof constitute ‘improper means’ only if such tactics are frivolous” (Pagliaccio v Holborn Corp., 289 AD2d 85, 85 [1st Dept 2001]; Arnon Ltd [IOM] v Beierwaltes, 125 AD3d 453 [1st Dept 2015]), which is clearly not the case here.
Plaintiffs brush this elemental obstacle aside by arguing it does not matter whether or not defendants (or their “straw men”) advanced frivolous arguments to the Bedford Town ZBA or prevailed in the litigation, since defendants committed a fraud as to who was really advancing the arguments. However, this argument lacks merit. Firstly, it is hardly unique or untoward that a commercial competitor would offer financial assistance to another party who seeks to litigate a legal claim on which they share a mutuality of interest. There appears to be no dispute that defendants paid the legal and expert fees for the nonparty DeFeo. That it may have been concealed from the ZBA does not amount to a fraud sufficient for pleading purposes. Secondly, the ZBA granted plaintiffs’ application for the use and area variances and special permit. After DeFeo prevailed in the article 78 proceeding and appeal, plaintiffs returned to the ZBA and once again were successful on their modified application. They are presently open for business as a car wash facility at the 562-570 North Bedford Road location. Thirdly, plaintiffs fail to show that “the contract or prospective business relationship would have been entered into but for defendant’s interference.” (2A NY PJI2d 3:57 at 585 [2017]; plaintiffs’ mem of law at 11-12.) When plaintiffs state, “[t]he contract being interfered with herein is the plaintiffs’ lease for the New Location, which is contingent upon obtaining the necessary permits and approvals to construct the new car wash facility at 562-570 North Bedford Road, Bedford Hills, New York” (plaintiffs’ mem of law at 4), it only serves to highlight the weak underpinning of their case. Further, plaintiffs protected themselves from the possibility of delay or denial by negotiating a contingency clause with the new landlord.
*566 Plaintiffs further contend that defendants interfered with their prospective business relationships by advertising Russell Speeder’s was coming to Bedford Hills on May 1, 2013 at the demised premises (defendants’ exhibit V). But such announcement was consistent with its long-planned, publicly announced and municipally approved intention to open its own car wash facility upon the expiration of plaintiffs’ lease. This fails to show unlawful or improper interference with plaintiffs’ business by defendants who had every right to publicize the opening of their new car wash business in their own building based upon the expiration of the lease on April 30, 2013.
In sum, on the first cause of action, the court finds the largely undisputed facts preclude a finding of liability and compel defendants’ respective motions for summary judgment be granted.
Second Cause of Action: Breach of Implied Covenant of Good Faith
For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, plaintiff must allege facts which tend to show that defendant sought to prevent performance of the contract or to withhold its benefits from plaintiff. (Michaan v Gazebo Hort., Inc., 117 AD3d 692 [2d Dept 2014]; Aventine Inv. Mgt. v Canadian Imperial Bank of Commerce, 265 AD2d 513, 514 [2d Dept 1999].) Here, the complaint alleges defendants breached the implied covenant of good faith in the plaintiffs’ lease for the demised premises (527 North Bedford Road) by intentionally interfering with and preventing plaintiffs from timely vacating the demised premises on April 30, 2013 when the lease term expired. Plaintiffs claim this was a result of defendants’ deliberate interference with the zoning applications that delayed the opening of the new facility. However, it is undisputed that the Town of Bedford Planning Board adopted a negative declaration under SEQRA on July 16, 2012, the Town of Bedford ZBA granted the variances and special permit on December 20, 2012, and final site plan approval had been granted by the Planning Board on February 26, 2013 and filed with the Town Clerk on March 22, 2013. These events occurred prior to the lease expiration. Moreover, plaintiffs elected to hold over in the demised premises that resulted in defendants bringing a summary eviction proceeding that was granted leading to plaintiffs vacating the premises by September 30, 2013. Lastly, as defendants correctly point out, the lease at the demised premises was with Splash, LLC while the lease entered into at the new *567 location was with Splash Bedford Hills, LLC, an entity with no contractual relationship with defendants.
On these facts, the court finds no triable fact exists on the claim of breach of implied covenant of good faith. The motions for summary judgment are similarly granted and the second cause of action is dismissed.
Third Cause of Action: Intentional Property Damage
Plaintiffs allege in or about March 2013, defendants intentionally and maliciously caused damage to the roof of the demised premises which resulted in rainwater leaking into the premises and damaging plaintiffs’ merchandise and property. Defendants counterclaim plaintiffs are indebted to defendants for approximately $250,000 for holdover use and occupancy, and additional rent for plaintiffs’ refusal to deliver possession of the premises for five months from May 1, 2013 through September 30, 2013. Defendants also counterclaim for over $200,000 in alleged property destruction and damage to the premises that were only discovered after plaintiffs vacated the premises under threat of eviction. As a third counterclaim, defendants seek damages for lost profits during the five-month period when they were unable to open the new car wash facility when plaintiffs held over in their expired tenancy.
The court finds triable issues of fact exist regarding what damage was caused and by whom, and what setoffs, if any, exist relating to plaintiffs’ use and occupancy of the premises during the five-month holdover.
Fourth Cause of Action: Negligent Property Damage
Plaintiffs allege in the alternative to the third cause of action that defendants negligently and carelessly caused damage to the waterproof roof materials causing water to leak in and damage plaintiffs’ merchandise and property.
The court similarly finds triable issues of fact regarding the fourth cause of action for the reasons set forth in denial of the motions for summary judgment for the third cause of action.
Fifth Cause of Action: Return of Security Deposit
Plaintiffs allege defendants have failed to return their security deposit of $11,500 that was paid pursuant to the lease assumption in 1995 and was to be held in an interest-bearing account. Defendants state, without further explanation, the security deposit of $11,500 escheated to the State of New York some years ago and no effort was made to reclaim the money by any party (defendants’ motion, R. Shullman aff ¶ 7).
*568 This cause of action is inextricably entwined with whether plaintiffs owe money to defendants or vice versa under the third and fourth causes of action. Accordingly, the court finds a triable issue of fact on the fifth cause of action. The motions for summary judgment on the fifth cause of action are denied.
The court has considered the additional contentions of the parties not specifically addressed herein. To the extent any relief requested by either party was not addressed by the court, it is hereby denied. Accordingly, it is hereby ordered that the motion of Russell Speeder’s Car Wash, LLC (motion sequence No. 11), made pursuant to CPLR 3212, for summary judgment dismissing the complaint is granted as to the first and second causes of action and denied as to the third, fourth and fifth causes of action and the imposition of sanctions, including attorney’s fees, against plaintiffs is denied; and it is further ordered that the motion of defendants Shullman Family Limited Partnership, Robert Shullman and Michael Shullman, made pursuant to CPLR 3212 (motion sequence No. 12), for summary judgment dismissing the complaint is granted as to the first and second causes of action and denied as to the third, fourth and fifth causes of action.