Hersh v Cohen (2024 NY Slip Op 03738)

Hersh v Cohen

2024 NY Slip Op 03738

Decided on July 10, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 10, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
JOSEPH J. MALTESE
HELEN VOUTSINAS
LOURDES M. VENTURA, JJ.

2019-09865
 (Index No. 6170/09)

[*1]Miriam Hersh, et al., respondents, 
v
Elizabeth Rebecca Cohen, et al., defendants, Zvi Gluck, appellant.

Patterson Belknap Webb & Tyler LLP, New York, NY (Catherine A. Williams, Michelle W. Cohen, Kade N. Olsen, and Ilan Stein of counsel), for appellant.
Miriam Hersh, Brooklyn, NY, and Michael Hersh, Brooklyn, NY, respondents pro se (one brief filed).

DECISION & ORDER
In an action, inter alia, to recover damages for tortious interference with contract and prima facie tort, the defendant Zvi Gluck appeals from an order of the Supreme Court, Kings County (Larry D. Martin, J.), dated May 31, 2019. The order, insofar as appealed from, denied that defendant's motion for summary judgment dismissing the amended complaint insofar as asserted against him.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and the motion of the defendant Zvi Gluck for summary judgment dismissing the amended complaint insofar as asserted against him is granted.
In June 2007, the plaintiffs Miriam Hersh (hereinafter Miriam) and Michael Hersh (hereinafter Michael) sent their son (hereinafter the child), then 15 years old, to a therapeutic boarding school called Tranquility Bay located in the country of Jamaica. In August 2007, the defendant Elizabeth Rebecca Cohen, the child's aunt, and the defendant Raphael Cohen (hereinafter together the Cohens), the child's uncle, began an internet campaign aimed at securing the child's release from Tranquility Bay. The Cohens' website and blog, inter alia, demanded the child's return, alleged that the plaintiffs had abused their children, and highlighted the alleged inhumane conditions at Tranquility Bay. The child's twin brother testified at a deposition that he created websites, opened and administered MySpace and Facebook groups, and "indulged . . . in all social networking" that he could calling for the child to be released from Tranquility Bay. According to Michael, the defendant Joshua Ambush, an attorney, called members of the board of directors of Chevra Hatzalah (hereinafter Hatzalah), a not-for-profit Orthodox Jewish volunteer ambulance service that employed Michael as its chief executive officer (hereinafter CEO), advised the members that a federal lawsuit had been filed against Michael, demanded that Hatzalah terminate Michael's employment immediately, and threatened that if it did not do so, Ambush would release copies of allegations from the federal lawsuit about Michael all over the internet, would give press releases, and would ensure that Hatzalah would lose millions of dollars in funding.
The defendant Zvi Gluck became involved in the efforts to have the child released from Tranquility Bay at the request of Sol Hersh, Michael's father. On March 26, 2008, an official [*2]with the United States Department of State called Gluck and told him that Tranquility Bay had agreed to bring the child into the United States embassy in Jamaica for a wellness visit the next day. Gluck flew to Jamaica with, among others, Dr. David Pelcovitz, a psychologist and professor specializing in adolescent psychology. On March 27, 2008, Dr. Pelcovitz interviewed and evaluated the child at the embassy in Jamaica. After the interview, Dr. Pelcovitz spoke with Michael by telephone, and Michael permitted the child to leave Tranquility Bay and return to New York. Around this same time, Michael was forced to resign from his position as CEO of Hatzalah, and Miriam's employment with the Girl's Program at the Chush School in Flatbush was terminated.
In March 2009, the plaintiffs commenced this action against numerous defendants, including Gluck. The amended complaint asserted causes of action alleging tortious interference with Michael's employment contract with Hatzalah, tortious interference with Miriam's employment, prima facie tort, and aiding and abetting tortious conduct. In May 2018, Gluck moved for summary judgment dismissing the amended complaint insofar as asserted against him. By order dated May 31, 2019, the Supreme Court, inter alia, denied Gluck's motion. Gluck appeals.
"The elements of a cause of action alleging tortious interference with contract are: the existence of a valid contract between the plaintiff and a third party, the defendant's knowledge of that contract, the defendant's intentional procurement of the third party's breach of that contract without justification, and damages" (Arnone v Burke, 211 AD3d 998, 999; see White Plains Coat & Apron Co., Inc. v Cintas Corp., 8 NY3d 422, 426). "To prevail on a claim for tortious interference with business relations in New York, a party must prove (1) that it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party" (Joseph v Fensterman, 204 AD3d 766, 771 [internal quotation marks omitted]; see Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 47).
Gluck established, prima facie, that he did not tortiously interfere with Michael's employment contract with Hatzalah or with Miriam's employment (see Affordable Hous. Assoc., Inc. v Town of Brookhaven, 150 AD3d 798, 799). Gluck demonstrated that he did not intentionally cause Michael to resign from his position as CEO of Hatzalah and did not cause Miriam's employment to be terminated through his own deposition testimony and the deposition testimonies of Isaac Stern, a member of the board of directors of Hatzalah, and the child's twin brother. In opposition, the plaintiffs failed to raise a triable issue of fact. The plaintiffs merely alleged that Gluck associated with individuals who allegedly posted harmful information about the plaintiffs on the internet and speculated that Gluck coordinated a phone call made by Dr. Pelcovitz that may have led to the plaintiffs' loss of employment. Accordingly, the Supreme Court should have granted that branch of Gluck's motion which was for summary judgment dismissing the causes of action alleging tortious interference with Michael's employment contract with Hatzalah and tortious interference with Miriam's employment insofar as asserted against him.
The Supreme Court also should have granted that branch of Gluck's motion which was for summary judgment dismissing the cause of action alleging prima facie tort insofar as asserted against him. The elements of a cause of action sounding in prima facie tort include "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts which are otherwise legal" (Diorio v Ossining Union Free School Dist., 96 AD3d 710, 712). Additionally, central to a prima facie tort cause of action is that the defendant's intent was motivated solely by malice or "disinterested malevolence" (DeMartino v Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, 189 AD3d 774, 776; see Diorio v Ossining Union Free School Dist., 96 AD3d at 712; DeNaro v Rosalia, 59 AD3d 584, 588). Here, Gluck established, prima facie, that the alleged acts the plaintiffs accused him of were committed, at least, partly in furtherance of a legitimate motive. In opposition, the plaintiffs failed to raise a triable issue of fact as to whether Gluck's alleged actions were motivated solely by disinterested malevolence (see DeNaro v Rosalia, 59 AD3d at 588).
Finally, the Supreme Court should have granted that branch of Gluck's motion which [*3]was for summary judgment dismissing the cause of action alleging aiding and abetting tortious conduct insofar as asserted against him. To recover damages for aiding and abetting tortious conduct, a plaintiff must establish knowledge of the alleged tortious conduct by the aider and abettor and substantial assistance by the aider and abettor in the achievement of the tortious conduct (see Land v Forgione, 177 AD3d 862; Markowits v Friedman, 144 AD3d 993, 996; Matter of Woodson, 136 AD3d 691, 693). Here, in opposition to Gluck's prima facie showing of entitlement to judgment as a matter of law dismissing this cause of action insofar as asserted against him, the plaintiffs failed to raise a triable issue of fact as to whether Gluck provided substantial assistance to others intending to harm the plaintiffs.
IANNACCI, J.P., MALTESE, VOUTSINAS and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court