Ocean Trails CLO VII v MLN Topco Ltd. (2024 NY Slip Op 06660)

Ocean Trails CLO VII v MLN Topco Ltd.

2024 NY Slip Op 06660

Decided on December 31, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 31, 2024

Before: Singh, J.P., Pitt-Burke, Higgitt, Rosado, O'Neill Levy, JJ. 

Index No. 651327/23 Appeal No. 2918 Case No. 2024-00169 

[*1]Ocean Trails CLO VII et al., Appellants-Respondents,
v
MLN Topco Ltd. et al., Respondents-Appellants, John Doe Affiliate of Credit Suisse AG et al., Defendants, Searchlight Capital Partners, LP, Defendant-Respondent.

Selendy Gay PLLC, New York (Andrew R. Dunlap of counsel), for appellants-respondents.
Davis Polk & Wardwell LLP, New York (Elliot Moskowitz of counsel), for Participating Lenders, respondent-appellant.
Orrick Herrington & Sutcliffe LLP, New York (Richard A. Jacobsen of counsel), for Credit Suisse AG, respondent-appellant.
Wachtell, Lipton, Rosen & Katz, New York (Emil A. Kleinhaus of counsel), for MLN Topco Ltd., Mitel Networks (International) Limited, MLN US Topco Inc. and MLN US Holdco LLC, respondents-appellants.
Latham & Watkins LLP, New York (Christopher Harris of counsel), for respondent.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about December 7, 2023, which, insofar as appealed from, granted defendants' motions to dismiss the seventh and eighth causes of action but denied their motions as to the first, second, third, fourth, fifth, and sixth causes of action, unanimously modified, on the law, to grant the motions to dismiss the first, second, third, fourth, fifth, and sixth causes of action, and to declare that the amended agreements are valid and enforceable contracts, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.
This case involves an "uptiering" transaction — i.e., one in which a borrower company buys back the existing loans of the majority of its lenders through issuance of new, more senior loans, thereby effectively subordinating the existing loans of minority lenders formerly in the same class as the majority lenders. Plaintiffs are the now-subordinated minority lenders.
The declaratory judgment claim (first cause of action) is not viable. Plaintiffs' consent to the amended agreements was not required because § 9.08(b)(i) and (iv) of the original agreements were not implicated.
Section 9.08(b)(i) only requires the consent of "each Lender directlyadversely affected" by a change in loan terms. Here, the effect on plaintiffs' loans was indirect (see Matter of Murray Energy Holdings Co., 616 BR 84, 99-100 [Bankr SD Ohio 2020] [applying New York law]; see also LCM XXII Ltd. v Serta Simmons Bedding, LLC, 2022 US Dist LEXIS 57976, *4-5 & n 4, 2022 WL 953109, *2 & n 4 [SD NY, Mar. 29, 2022, 21 Civ 3987 (KPF)]). There was also no "agreement" to "waive[], amend[], or modif[y]" the terms of any loans. Rather, the participating lenders' loans were assigned back to the borrower, cancelled, and then replaced with new loans with their own, new terms (see Matter of Chrysler LLC, 576 F3d 108, 120 [2d Cir 2009], vacated as moot on other grounds by 558 US 1087 [2009]; Matter of Metaldyne Corp., 409 BR 671, 677-678 [Bankr SD NY 2009], affd 421 BR 620 [SD NY 2009]).
For the same reasons, the subject transaction did not "amend the provisions of" § 7.02 within the meaning of § 9.08(b)(iv). Had the parties wanted an effective or functional amendment to be covered, they could have used language to that effect, as they did elsewhere (see Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 560 [2014]). Instead, they used terms suggesting an actual, textual amendment. Contrary to plaintiffs' claim, the amended agreements did not amend the definition of the term "Intercreditor Agreement" used in § 7.02, which was open-ended.
The breach of contract claims (second through sixth causes of action) should also be dismissed. The subject transaction did not breach §§ 2.18(c) and 9.04(b)(ii)(D) because it complied with the express exception to these provisions located at § 9.04(i). This provision authorizes the borrower to "purchaseby way of assignment and become [*2]an Assignee with respect to Term Loans at any time." The parties dispute whether the subject transaction represented a "purchase" or simply a "refinancing" or "exchange" of the existing loans for new loans. However, these concepts are not mutually exclusive. There is no indication in the agreements that a refinancing or exchange cannot include a purchase, nor is there any indication that a purchase requires payment in full, upfront, in cash, or that debt cannot constitute payment. Indeed, several provisions suggest otherwise. A requirement of cash payment or prohibition on the use of debt as payment would also not be consistent with the common understanding of the word "purchase" (see Justinian Capital SPC v WestLB AG, N.Y. Branch, 28 NY3d 160, 169-170 [2016]).
The subject transaction also did not breach § 2.21 because any rights conferred under that provision were not sacred rights delineated under § 9.08(b) and thus could validly be waived with the consent of a majority of lenders, which was undisputedly obtained here. The new loans incurred in connection with this transaction could also not, by definition, have been Incremental or Refinancing Term Loans insofar as they were incurred after the date of the amendments. Section 2.21 does not contain any broader prohibition on incurring other types of new debt. Although §§ 6.01 and 6.02 did, these were deleted from the amended agreements and are not at issue here.
The breach of the implied covenant of good faith and fair dealing claim was properly dismissed. Although the implied covenant is part of every agreement, including the agreements at issue here, a reasonable person would not be justified in understanding that these agreements contained the particular implied promise claimed — i.e., that plaintiffs were to maintain their pro rata rights even in the face of the issuance of new debt (see generally Cordero v Transamerica Annuity Serv. Corp., 39 NY3d 399, 409-410 [2023]). The agreements, which were negotiated by sophisticated parties, contain specific, detailed provisions regarding when plaintiffs are entitled to pro rata treatment and when they are not. Although the agreements contain limitations on the acquisition of new debt, they also allow the borrower to purchase loans "at any time" and permit amendments by majority consent with enumerated exceptions. Had the parties wanted to prohibit amendments such as those at issue here, they could have done so, but they did not (see Audax Credit Opportunities Offshore Ltd. v TMK Hawk Parent, Corp., 72 Misc 3d 1218[A]; 2021 NY Slip Op 50794[U], *10 [Sup Ct, NY County 2021] [hereinafter Trimark]; see also Intrepid Invs., LLC v Selling Source, LLC, 213 AD3d 62, 66-67 [1st Dept 2023]; Women's Interart Ctr., Inc. v NYC Economic Dev. Corp., 132 AD3d 442, 442-443 [1st Dept 2015], lv denied 29 NY3d 907 [2017]).
The tortious interference with contract claim was also properly dismissed. For the reasons stated above, there was no underlying breach (see generally [*3]Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1996]). Any such claim was also barred by the economic interest defense (see generally White Plains Coat & Apron Co., Inc. v Cintas Corp., 8 NY3d 422, 426 [2007]).
It is undisputed that Searchlight Capital Partners, LP is the controlling owner of the breaching entity and that Credit Suisse AG, Cayman Island Branch was its creditor. Plaintiffs' own allegations make clear that Searchlight sought to enhance the borrower's prospects by raising money to buy another company and pay down debt (see ICG Global Loan Fund 1 DAC v Boardriders, Inc., 2022 NY Slip Op 33492[U], *25 [Sup Ct, NY County 2022]; Trimark, 2021 NY Slip Op 50794[U], *11-12), and that Credit Suisse sought to protect its interest as a lender (see Wilmington Trust Co. v Burger King Corp., 34 AD3d 401, 402 [1st Dept 2006], lv denied 8 NY3d 806 [2007]; Ultramar Energy v Chase Manhattan Bank, 179 AD2d 592, 592-593 [1st Dept 1992]; U.S. Bank Natl. Assn. v Triaxx Asset Mgt. LLC, 2019 US Dist LEXIS 159909, *27-28, 2019 WL 4744220, *9 [SD NY, Aug. 26, 2019, 18 Civ 4044 (VM)]). Plaintiffs' conclusory allegations that the subject transaction was "contrary to [the borrower's] interests" are not supported by its factual allegations. It does not matter whether the borrower could have secured an even more favorable deal had it sought financing from all lenders (see Trimark, 2021 NY Slip Op 50794[U], *11-12).
Plaintiffs do not claim that Searchlight or Credit Suisse employed fraudulent or illegal means in connection with the subject transaction. They also failed to sufficiently allege malice. That Searchlight wanted to help favored lenders while also boosting the borrower's business does not demonstrate a desire to harm plaintiffs. Credit Suisse's alleged desire to secure early repayment of its loan cannot even arguably be characterized as malicious (or even in bad faith).
In view of our disposition of these issues, we need not reach the parties' remaining arguments.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 31, 2024